**Lorraine L. COLLER, Appellant,**

v.

**GUARDIAN ANGELS ROMAN CATHOLIC CHURCH OF CHASKA, et al., Respondents.**

**No. 50360.**

Supreme Court of Minnesota.

June 27, 1980.

Julius A. Coller, II, Shakopee, for appellant.

Meier, Kennedy & Quinn and Gordon W. Shumaker, St. Paul, for respondents.

Heard before OTIS, YETKA, and SCOTT, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

Appellant commenced this action against Guardian Angels Church, Guardian Angels School, members of the school board, and the school principal, in Carver County District Court in May of 1975 for money damages. The church and school answered the complaint, and the individual defendants (represented by the same counsel) moved for dismissal on the grounds that the complaint failed to state a claim against them in their individual capacity. This motion was denied. The parties proceeded with discovery. On February 28, 1977, appellant moved for default judgments against the individual defendants because the defend-

ants had failed to answer the complaint. Five days later, defendants' attorney tendered their answer to plaintiff and made a motion to the trial court for enlargement of the time for answering. Defendants' attorney stated in an affidavit that he had prepared an answer for the individual defendants in a timely manner but had inadvertently failed to serve it. The trial court granted defendants' motion for enlargement and denied appellant's motion for default judgments. The matter was subsequently tried without a jury in May, 1979. At the close of appellant's evidence, the trial court dismissed the action against the defendants in their individual capacity. The defense then rested its case for the church and school without introducing any additional evidence. The trial court made findings of fact and dismissed the action against the remaining defendants. This appeal is from the dismissal of defendants, from the denial of appellant's motion for default judgments and from the granting of defendant's motion for enlargement of time. We affirm in all respects.

Guardian Angels School is a private grade school owned and administered by Guardian Angels Church. It is staffed by both religious and lay teachers under the direction of a Sister principal. A school board composed of eight lay persons, the church pastor, and the school principal is responsible for the policies, budget, and staffing of the school. Appellant was employed as a lay teacher in the school for four consecutive years, 1971 through 1975, under a series of one-year contracts. Defendant Sister Hildegarde was principal of the school during the latter three years of plaintiff's employment.

In February, 1975, Sister Hildegarde informed appellant that her teaching contract would not be renewed for the next year because a nun had been found to replace her. Nuns were preferred as teachers by the school because of budgetary considerations and parental preferences. When appellant pressed Sister Hildegarde for any other possible explanation for the decision, Sister Hildegarde also mentioned that someone had stated at a school board meet-

ing that appellant was nervous around the children. Sister Hildegarde testified that the availability of a nun was the primary reason for the decision not to rehire appellant and that even if appellant had not been nervous or fatigued, she would not have been rehired.

Appellant claimed at trial and argues on appeal that although there is no written policy of tenure at the school, the school's hiring practices have given rise to de facto tenure, and therefore appellant was entitled to continue teaching at the school in the absence of any misconduct on her part. The parties stipulated before trial that appellant is a competent, qualified teacher and that if there is de facto tenure, there was no sufficient cause not to renew appellant's contract. Appellant also claims that her position as director of a Right to Read program sponsored by the state gave her a quasi-contractual right to direct all phases of the program at the school and that this implied contract was breached when her employment was not renewed. Finally, appellant argues that she has a due process right to a hearing which was not satisfied in this case.

The following issues are raised on appeal:

(1) Did the trial court act within its discretionary authority in denying appellant's motion for default judgments against the individual defendants and in enlarging the time within which they could answer the complaint?

(2) Was the trial court correct in dismissing the action against the individual defendants at the close of appellant's presentation of evidence and against the corporate defendants after the defense rested?

1. The individual defendants in this case (Sister Hildegarde and members of the school board) responded to appellant's complaint by filing a motion to dismiss. The motion was denied. Defendants' attorney then prepared an answer but failed to serve it on appellant due to his own inadvertence and oversight.

Discovery proceeded with the participation of all defendants for one and one-half

years before appellant filed her motion for default judgments. During this period, appellant availed herself of discovery against the individual defendants and never indicated that they were in default. When appellant did file her motion for default judgments, defendants' attorney promptly served their answer. In this context, the trial court denied appellant's motion and gave defendants an extension of time within which to answer, pursuant to Minn.R. Civ.P. 6.02, which provides in part:

When by statute or by these rules * * * an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect * * *.

A trial court's action permitting a party to serve or file a pleading after expiration of a time limit is discretionary and will not be reversed unless the discretion has been abused. *Kosloski v. Jones*, 295 Minn. 177, 203 N.W.2d 401 (1973); *Roinestad v. McCarthy*, 249 Minn. 396, 82 N.W.2d 697 (1957). Relief from a default judgment or denial of a motion for a default judgment is proper when four requirements are met: defendant has a reasonable defense on the merits; defendant has a reasonable excuse for his failure to answer; defendant acted with due diligence after notice of the entry of judgment; and no substantial prejudice will result to other parties. *Koloski v. Jones, supra; Sommers v. Thomas*, 251 Minn. 461, 88 N.W.2d 191 (1958).

In the instant case, all four criteria are present. First, the individual defendants have reasonable defenses on the merits. They acted only in their representative capacity, and therefore they cannot be held personally liable. In addition, they are shielded by the defenses put forth by the school. The strength of these defenses was apparent to the trial court, which granted defendants' motions to dismiss. Second, the individual defendants were not. at all responsible for their failure to answer; the failure was occasioned solely by the inadvertence of their attorney. Minnesota courts have consistently held that default caused by a party's attorney rather than by the party himself should be excused. *See, e. g., Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454 (1952); *Unowsky v. Snow*, 161 Minn. 489, 201 N.W. 936 (1925); *In re Estate of Walker*, 183 Minn. 325, 236 N.W. 485 (1931). The case of *Whipple v. Mahler*, 215 Minn. 578, 10 N.W.2d 771 (1943), relied on by appellant to support her argument that relief should be denied, is distinguishable on the ground that defendants in that case were served personally and knew of their obligation to answer but simply forgot. The neglect of the parties themselves led to the default judgment. Third, defendants' attorney acted with due diligence once he became aware of his failure to serve an answer. Appellant served notice of her motion for default judgment on February 28, 1977. Defendants' attorney served the answer and motion for enlargement of time on March 4, 1977. Finally, appellant was not substantially prejudiced by the delay in answering. Appellant and her attorney proceeded with discovery as if all defendants were properly joined in the action. Defendants fully cooperated and actively participated in the discovery proceedings. Appellant was made aware of defendants' positions on the legal issues by defendants' motion to dismiss and motion for summary judgment. Moreover, appellant's assertion that the enlargement of time for defendants' answer caused the delay in trial of this case is simply untrue.

For these reasons, we hold that the trial court acted well within its discretion in denying appellant's motion for default judgment and in granting defendants' motion for enlargement of the time for answering.

2. At the close of appellant's presentation of evidence, the trial court dismissed the individual defendants on the ground that all of them had acted solely in their representative capacity and thus there was no basis for holding them liable individ-

ually. Appellant opposed the motion to dismiss three of the individual defendants (two school board members and the school principal), but introduced no evidence from which it could be inferred that these three acted outside the scope of their duties. Therefore, dismissal of the individual defendants was clearly correct.

◼ Appellant introduces three alternative theories to support her right to recover damages from the school and church. First, she argues that she had de facto tenure, and thus, absent misconduct, she was entitled to have her contract renewed each year. She concedes that there was no written policy of tenure at Guardian Angels School, but claims that the usual practice of renewing teachers' contracts, amounts to de facto tenure. However, all of the other witnesses testified that the school did not have an unwritten tenure policy. Instead, each teacher was hired on an annual basis, and her performance was carefully reviewed before a decision was made to renew her contract for the following year. Moreover, other factors such as the budget and the availability of nuns to teach were considered in arriving at each decision. Shirley Rutt, a teacher at Guardian Angels School for seventeen years, testified that each teacher was reviewed individually and did not know whether she would be asked to continue teaching. Ms. Rutt also stated that there was no customary tenure at the school.

Judicial decisions which have addressed the issue of de facto tenure have emphasized that a subjective expectancy of continued employment does not, by itself, establish de facto tenure. *Setty v. Minnesota State College Board*, 305 Minn. 495, 235 N.W.2d 594 (1975); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Hawkins v. Linn County School District No. 14*, 16 Or.App. 41, 517 P.2d 330 (1973). In the instant case, the trial court was correct in finding that there was no evidence from which a de facto tenure policy could be inferred, and that appellant had no implied tenure rights.

◼ As a second theory of recovery, appellant argues that the Right to Read program sponsored by the state and undertaken by Guardian Angels School under the directorship of plaintiff gave rise to an implied contract between the school and appellant to continue appellant's employment throughout the duration of the program. The purpose of the Right to Read program is to emphasize and improve reading skills among young children in the schools. Appellant attended summer classes and did a significant amount of extra work during the school year in connection with her position as reading director. She contends that there was a binding contract between the state and the school for participation in the program, that she knew of the contract and relied on it to her detriment by performing additional duties, and that the school was unjustly enriched by her additional work. However, the trial court found that appellant was not a party to the Right to Read program or to the agreement with the state, that plaintiff's directorship of the program was undertaken voluntarily, and that the school's participation in the state's program was entirely voluntary and terminable at will. The trial court concluded that plaintiff had failed to prove the existence of an implied contract under which she was entitled to continue teaching beyond the 1974–5 school year by virtue of her position as the Right to Read director. We conclude that the factual findings of the trial court are not clearly erroneous, and we therefore agree that appellant has failed to prove the existence of an implied contract of employment.

◼ Appellant's third argument is that she is constitutionally entitled to a hearing on the issue of nonrenewal of her contract. However, the authorities cited by appellant to support her position are inapposite to the instant case.[1] Due process protection of

---

1. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v.*

*Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Slochower v. Board of Ed-*

liberty and property interests under the Fourteenth Amendment only extends to actions by the state, and there is no state action in this case. Moreover, appellant has not shown that her expectation of contract renewal amounts to a liberty or property interest as those have been defined by the courts. Finally, appellant has not pointed to the existence of any rule adopted by the school or the archdiocese which requires a hearing for teachers whose contracts are not renewed. In this case, appellant was given a chance to present her position before the school board and did speak to the board for more than an hour in March, 1975. Therefore, appellant's contention that she had a due process right to a hearing which was violated has no merit.

Affirmed.

*ucation*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Setty v. Minnesota State College Board*, 305 Minn. 495, 235 N.W.2d 594 (1975).