James THAYER, et al., Appellants,

v.

AMERICAN FINANCIAL ADVISERS, INC., et al., Defendants,

and

Merrill Lynch, Pierce, Fenner & Smith, Inc., et al., Respondents.

No. 81–557.

Supreme Court of Minnesota.

Aug. 6, 1982.

Gerald M. Fine, Wayzata, for appellants.

Dorsey, Windhorst, Hannaford, Whitney & Halladay and Stephen P. Kelley, Minneapolis, for Merrill Lynch, Pierce, Fenner & Smith, Inc., et al.

AMDAHL, Chief Justice.

This is an appeal from an order of the Hennepin County District Court, dated March 23, 1981, denying plaintiffs' motion for default judgment and staying further proceedings pending arbitration. Plaintiffs, James Thayer and Robert Gilbertson, brought this action against Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), Robert Gustafson, a Merrill Lynch account executive, Robert Brandt, Robert Schneider, and American Financial Advisers, Inc., alleging violations of the Commodity Exchange Act, 7 U.S.C. §§ 1–24 (1976), and asserting common-law claims based on fraud, breach of fiduciary duty, and negligence.

None of the defendants[1] interposed an answer to plaintiffs' complaint. Counsel for respondents Merrill Lynch and Gustafson was granted a number of extensions by plaintiffs' attorney to answer; finally, respondents demanded that plaintiffs submit the matter to arbitration. Defendants American Financial Advisers, Inc., Brandt, and Schneider are not represented by counsel, have not filed answers, and have not made appearances. These three defendants are not signators to the arbitration agreement.

This case arises out of a partnership commodity account that plaintiffs opened with Merrill Lynch on or about July 25, 1979. In June or July of 1979, plaintiffs responded to a newspaper advertisement placed by defendants Brandt, Schneider, and American Financial Advisers, Inc. Brandt allegedly advised them that a $25,000 minimum investment was required to earn 200% to 250% per year on the investment. Brandt then sent plaintiffs to the Merrill Lynch office, where they met with Robert Gustafson and the other defendants. They were advised that the investment involved commodities futures trading through an account with Merrill Lynch and that the trading would be done at the direction of defendant Schneider. Defendants allegedly made various representations to plaintiffs that Schneider and Brandt were 85%, 95%, or 100% successful in their trading of commodities futures. These alleged misrepre-

---

1. We use the word "defendants" to refer collectively to all of the parties against whom plaintiffs brought suit and to refer to the three parties who have failed to appear in the action, *i.e.*, American Financial Advisers, Inc., Brandt, and Schneider. The word "respondents" refers only to Merrill Lynch and Gustafson.

sentations form the basis for plaintiffs' claims that they were fraudulently induced to enter into the commodity account agreement.

In connection with the opening of their commodity account, Thayer and Gilbertson each signed commodity account agreements. Clause 6 of those agreements contains arbitration agreements, which state in part that "Any claim, grievance or controversy between us arising out of your business or this agreement shall be settled by arbitration * * *." Clause 7 notifies the investor that he is not required to consent to the arbitration agreement as a condition of opening his account. Finally, there is a separate space in the contract where plaintiffs signed to indicate their consent to the arbitration agreement. The parties to the arbitration agreement are the two plaintiffs and Merrill Lynch and Gustafson.

After executing the commodity account agreements, plaintiff Thayer invested $15,000 and plaintiff Gilbertson invested $10,000. Subsequently, plaintiffs lost all or nearly all of their investment. Plaintiffs attribute this loss to the alleged misconduct of defendants; defendants assert the loss was due to unfavorable price fluctuations in the commodities market.

On February 19, 1981, plaintiffs brought a motion for an order staying arbitration and for default judgments against all the defendants. Respondents Merrill Lynch and Gustafson cross-moved to compel arbitration. The matter was heard at special term on March 3, 1981, following which the court issued an order denying plaintiffs' motion and granting respondents' motion. In addition, the special term judge ordered that the question whether plaintiffs' claims against the other three defendants were arbitrable should be decided by the arbitrators.

The following issues are presented by this appeal: (1) whether the trial court erred by failing to grant plaintiffs' motion for default judgment; and (2) whether plaintiffs' allegations of fraud in the inducement should be tried by the court or by arbitration.

1. Minn.R.Civ.P. 55.01 provides that "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend within the time allowed therefor by these rules or by statute, and that fact is made to appear by affidavit, judgment by default shall be entered against him * * *." Thus a party is technically in default if no defensive motion is pending and if the time for responsive pleading has expired. We have elaborated further the requirements for entry of default judgment under Rule 55.01:

> [D]enial of a motion for a default judgment is proper when four requirements are met: defendant has a reasonable defense on the merits; defendant has a reasonable excuse for his failure to answer; defendant acted with due diligence after notice of the [motion for default judgment]; and no substantial prejudice will result to other parties.

*Coller v. Guardian Angels Roman Catholic Church*, 294 N.W.2d 712, 715 (Minn.1980).

In this case, respondents Merrill Lynch and Gustafson meet all four requirements for the denial of the motion for default judgment. Merrill Lynch and Gustafson have reasonable defenses on the merits. They argue that plaintiffs' losses were due to unfavorable price fluctuations in the commodities markets rather than to their own misconduct or negligence. Second, Merrill Lynch and Gustafson were not responsible for their failure to answer plaintiffs' complaint; the failure was due wholly to the inadvertance of their attorney. We have held that "default caused by a party's attorney rather than by the party himself should be excused." *Id.* at 715. *See, e.g., Conley v. Downing*, 321 N.W.2d 36 (Minn. 1982); *Hinz v. Northland Milk & Ice Cream Co.*, 237 Minn. 28, 53 N.W.2d 454 (1952); *In re Estate of Walker*, 183 Minn. 325, 236 N.W. 485 (1931). Third, counsel for Merrill Lynch and Gustafson acted with due diligence once he received notice of plaintiffs' motion for default judgment. Plaintiffs served notice of their motion for default judgment on February 19, 1981. Merrill Lynch and Gustafson cross-moved to compel

arbitration on February 26, 1981. Finally, plaintiffs were not substantially prejudiced by the delay in answering, nor do they argue that they have been prejudiced. For these reasons, we hold that the trial court acted within its discretion in denying plaintiffs' motion for default judgment as to respondents Merrill Lynch and Gustafson.

However, we also hold that the trial court erred in refusing to enter default judgments against defendants American Financial Advisers, Inc., Brandt, and Schneider. These defendants were served almost 2 years ago, and none of them has made an appearance or filed a formal answer.[2] Unlike respondents Merrill Lynch and Gustafson, their failure to answer was the result of their own neglect. Neglect of the parties themselves that leads to entry of default judgment is inexcusable neglect, and we have held that such neglect is a proper ground for refusing to open a judgment. *Whipple v. Mahler*, 215 Minn. 578, 10 N.W.2d 771 (1943). Because defendants American Financial Advisers, Inc., Brandt, and Schneider, even if they were represented on this appeal, could not make the showing required by *Coller* to avoid entry of default judgment, we remand the matter to the trial court and order entry of default judgment against those defendants.

2. Plaintiffs alleged in their complaint that defendants made false misrepresentations and concealed material facts concerning the risks and profitability of commodity futures trading accounts and concerning defendants' experience and methods in commodity futures trading. These allegations of fraud relate undisputably to the principal contract of investment and not to the arbitration agreement. Plaintiffs claim that the allegation of fraud in the inducement should be tried before the court. Respondents Merrill Lynch and Gustafson contend that the agreements are severable because plaintiffs consented separately to the arbitration clause, that the arbitration clause itself is not tainted by fraud, and therefore

that the trial court properly directed the parties to arbitration.

Both the issue of whether fraud in the inducement is subject to arbitration and the issue of severability were decided in *Atcas v. Credit Clearing Corp.*, 292 Minn. 334, 197 N.W.2d 448 (1972). In *Atcas*, we held that the determination of whether fraud in the inducement is a proper subject for arbitration was dependent on the intention of the parties as expressed in the language of the arbitration agreement. *Id.* at 341, 197 N.W.2d at 452. We concluded that if the language in the arbitration agreement evinces a specific intent to arbitrate the issue of fraud in the inducement, or if the language is sufficiently broad to comprehend that the issue of fraudulent inducement be arbitrated, then that issue is a proper subject for arbitration. Conversely, if no such intent is expressed in the agreement or if the language is not sufficiently broad to comprehend arbitration of that issue, then the issue of fraudulent inducement should be decided by the court. *Id.*

■ In *Atcas*, the language "Any controversy whatsoever, relating to this Agreement shall be settled by arbitration" was held to express no intent to arbitrate the issue of fraudulent inducement; furthermore, the language was not deemed sufficiently broad to comprehend arbitration of that issue. *Id.* at 347–48, 197 N.W.2d at 456. In the instant case, the arbitration agreement states that "Any claim, grievance or controversy between us arising out of your business or this agreement shall be settled by arbitration." Respondents argue that the arbitration agreement in this case is broader than that involved in *Atcas* because it includes within its scope controversies relating to the customer's "business" as well as those relating to the agreement. However, the only "business" plaintiffs transacted with respondents was the commodities account, the subject of the agree-

---

2. Defendant Schneider responded by letter dated January 16, 1981, in which he denied each allegation. However, the record is barren of any evidence that he has obtained counsel or filed any formal pleadings, nor did he respond to or appear at the hearing on plaintiffs' motion for default judgment.

ment. Respondents' attempt to distinguish their arbitration agreement provides, at best, a shaky foundation upon which to reach a result different from that reached in *Atcas*. The agreement clearly does not evince a specific intent to arbitrate the issue of fraudulent inducement, and it is not markedly different from the agreement in *Atcas*. We therefore hold, consistent with *Atcas*, that "there was no intent expressed by both parties to arbitrate the issue of fraud in the inducement nor does the language used in the agreement comprehend arbitration of that issue." *Id.* at 348, 197 N.W.2d at 456.

We now turn attention to respondents' argument that the arbitration clause is severable from the principal contract. In *Atcas*, we concluded, in spite of an express statement that the arbitration clause was severable, that "[w]hether the agreement to arbitrate is found to be severable or inseverable is of no significance because we hold that if fraud vitiating the primary subject matter of the contract is proved, it would also vitiate the arbitration clause." *Id.* at 348, 197 N.W.2d at 456.

The federal courts apply a contrary approach. In construing the Federal Arbitration Act, 9 U.S.C. §§ 1–13 (1976), federal courts have held that arbitration clauses are severable, with the result that fraud in the inducement of other parts of the contract does not taint the arbitration clause unless the arbitration clause itself was induced by fraud. *See Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 410–11 (2d Cir. 1959), *appeal dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The leading federal case is *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), in which the Supreme Court held that a federal court may decide the issue of fraud in the inducement only if such fraud is alleged with respect to the arbitration agreement itself rather than the contract generally. *Id.* at 403, 87 S.Ct. at 1805–06. The Court noted that this view honored "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject

to delay and obstruction in the courts." *Id.* at 404, 87 S.Ct. at 1806.

Respondents seek to take advantage of these federal cases by arguing that this case is governed by the Federal Arbitration Act rather than the State Uniform Arbitration Act, Minn.Stat. §§ 572.08–.30 (1980). Included within the scope of the Federal Arbitration Act are contracts "involving commerce." 9 U.S.C. § 2 (1976). "Commerce" is defined in section 1 of the Act as "commerce among the several states." Respondents contend that because the commodity futures account in this case involves interstate commerce, this court should apply the body of federal substantive law developed under the federal Act.

 We do not believe we are required to apply federal law in this case, despite our conclusion in a recent case that "[t]hough two Minnesota entities are parties to this arbitration, the federal arbitration statute applies * * * because construction materials for this project came from all over the country." *Northwest Mechanical, Inc. v. Public Utilities Commission*, 283 N.W.2d 522, 523–24 (Minn.1979). Our determination that federal law does not govern the issue of severability rests on our reading of *Prima Paint* and of the federal Act itself. The Supreme Court in *Prima Paint* did not expressly hold that the body of federal substantive law created by federal judges under the Federal Arbitration Act was required to be applied by state courts. There is also no evidence in the history or the language of the federal Act that Congress intended to preempt state regulation of arbitration agreements that are part of contracts involving interstate commerce. The legislative history indicates that the federal Act was to have a limited application to contracts between merchants for the interstate shipment of goods. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. at 409, 87 S.Ct. at 1808–09 (1967) (Black, J., dissenting). Moreover, the language of the federal Act makes it applicable to contracts "involving commerce" as opposed to contracts "affecting commerce," which is the

statutory language that Congress normally uses when it seeks to exercise its full powers over commerce. The Act not only uses the narrower language, but also is without any declaration of some national interest to be served or some nationwide comprehensive scheme of regulation to be created. This suggests that Congress did not intend to "occupy the field" of arbitration agreements contained in contracts involving interstate commerce. Absent clearer expression of intent to preempt, this court is free to apply both the statutory and the common law of Minnesota to cases brought in state courts involving arbitration agreements contained in interstate contracts. Therefore, we follow our decision in *Atcas* and hold that the issue of severability is immaterial in cases decided under the Minnesota Uniform Arbitration Act.

Plaintiffs must overcome one additional obstacle before the arbitration proceedings will be stayed. In *Atcas*, we stated:

> In order to stay arbitration proceedings on the grounds of fraud in the inducement of the contract, we hold that the party seeking such relief must properly proceed to avoid the agreement; that is, he must seek rescission but not damages, and he cannot rescind in part and affirm in part. His rescission of the contract must be in toto.

292 Minn. at 348, 197 N.W.2d at 456. Plaintiffs' prayer for relief asks for $24,500, the sum apparently representing their lost investment. They also ask for punitive damages of $500,000 and for "profits realized by defendants." Respondents argue that plaintiffs' claim is for actual and punitive damages and that nowhere in the complaint is there any reference to rescission.

 A reviewing court must limit itself to a consideration of only those issues that the record shows were presented and considered by the trial court in deciding the matter before it. *Thompson v. Barnes*, 294 Minn. 528, 200 N.W.2d 921 (1972). Because the trial court has not had an opportunity to consider whether plaintiffs' claim for relief falls within the pleading requirement of *Atcas* noted above, we remand the matter

for the trial court's determination on that issue.

Finally, because we hold that upon remand the trial court should enter default judgments against the three defendants who were not signatory parties to the arbitration agreement, we need not address the issue, raised by the parties, of whether the presence of those defendants in the action invokes the balancing test announced in *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (1976), to determine whether a requested arbitration should be granted or denied in the context of multiparty litigation where some, but not all, of the parties are subject to the arbitration agreement. That issue will be made moot by the trial court's entry of default judgment against defendants American Financial Advisers, Inc., Brandt, and Schneider.

Affirmed in part, reversed in part, and remanded.