## In re ESTATE OF Virgil J. GOYETTE and Joanna Goyette.

No. C0-85-1104.

Court of Appeals of Minnesota.

Nov. 5, 1985.

Charles R. Wahlquist, Starbuck, appellant and Atty. pro se.

John E. Mack, New London, for respondent Stefanchick.

Corrine D. Lynch, Willmar, for respondent Kopel.

James F. Nelson, Glenwood, for heirs of Joanna Goyette Estate.

Considered and decided by RANDALL, P.J., and PARKER and SEDGWICK, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

This is a combined appeal from two orders involving the estate of a mother and the estate of a son. Appellant contends that under a contingent fee agreement with the deceased son, he is entitled to 40 percent of the son's share of his mother's estate. His attempts to collect this fee from either of the estates have been denied by the trial court. We affirm.

## FACTS

Joanna Goyette died in 1979. One of her four surviving children, Virgil Goyette, retained attorney Charles Wahlquist to represent him in various challenges to his mother's will. He agreed to pay Wahlquist 40 percent of his share of his mother's estate:

> For complete representation of Virgil Goyette, my estate, my personal representative and my heirs and assigns in the estate of Joanna Goyette, his mother, including the filing of Petition for Allowance of Will with nomination of another personal representative, including supervision of probate, attendance of hearings, sale of real estate, gathering of personal effects and appraisal thereof; including also questions of guardianship and its dismissal, and as to the testamentary capacity of mother to make will, land lease and sale of 80 acres in August of 1978; submit for legal proceedings and adjustment of my claim for fractional

interest in the Joanna Goyette estate as a surviving son, for any property or monies received, on a forty per cent (40%) contingent fee basis.

By the time Joanna Goyette's will was probated in 1982, Virgil Goyette had replaced Wahlquist as his attorney and had changed attorneys twice.

While he was representing Virgil Goyette, Wahlquist also served as attorney for Agnes Kopel, the special representative of the Joanna Goyette estate.[1] Wahlquist eventually withdrew and was paid $4,000 by the Joanna Goyette estate for his services.

Virgil Goyette died in 1984 in Florida. His sole beneficiary under a will was Ruth N. Stefanchick, with whom he had lived for nine years. Stefanchick was appointed personal representative of the Virgil Goyette estate in Florida and applied for appointment as domiciliary foreign personal representative in Minnesota.

Wahlquist never completed the work for Virgil Goyette. Nor did he ever reduce his residual quantum meruit claim to judgment. Nevertheless, he vigorously attempted to collect his "contingent fee." Claiming to be a creditor of the Virgil Goyette estate, he filed his own petition in Minnesota for formal adjudication of intestacy, determination of heirs and appointment of administrator, naming himself as proposed administrator. This petition was dismissed by the probate court in October 1984. He also filed a formal claim against the Virgil Goyette estate as a creditor, demanding 40 percent of the decedent's share of his mother's estate. This claim was denied by the estate in October 1984 and Wahlquist did not appeal.

Unable to collect on his own claims, Wahlquist located Virgil Goyette's ex-wife and grown daughter, Lillian Pariseau and Verva Bauer. Apparently upon his advice, Pariseau and Bauer brought a claim for unpaid alimony and child support against the Virgil Goyette estate in December 1984. This claim was not served upon Stefanchick, the lawful personal representative of the estate, but upon Wahlquist, who was still claiming to be the personal representative even though his petition for formal adjudication of intestacy had been denied months earlier. Wahlquist also convinced Bauer to convey to him a quit claim deed granting him 40 percent of Virgil Goyette's one-fourth share in the Joanna Goyette estate. Wahlquist filed a notice of lis pendens on the real property in the estate; a quiet title action is currently pending to clear the title.

In February 1985, a hearing was held at which Wahlquist brought various motions in the matter of the Virgil Goyette estate, including one to have the Florida will voided; one to have the original trial judge, who had removed himself at Stefanchick's request some months earlier, reappointed as acting judge on the case; and one to have Stefanchick's attorney removed. Most of these motions were difficult to understand or meritless and were denied by the trial court. One matter, however, had not yet been ruled upon. In an order issued March 15, 1985, Wahlquist's objection to the appointment of Stefanchick as domiciliary foreign personal representative was dismissed as untimely. Wahlquist appeals to this court from that order.

Combining appeals, Wahlquist also appeals from the May 29, 1985 "Order of Complete Settlement of the Estate and Decree of Distribution" in the Joanna Goyette estate. Following a hearing, the trial court denied Wahlquist's claim that he is entitled to 40 percent of Virgil Goyette's share of his mother's estate on the record. The court reiterated its ruling in an order dated July 2, 1985.[2]

---

1. A.H. Stellnar had been nominated personal representative in the will; Agnes Kopel was subsequently appointed special representative and now serves as personal representative of the estate.

2. Although this written order denying Wahlquist's motions is dated subsequent to the filing of the notice of appeal, those motions were denied on the record during the May hearing. We therefore consider this order in connection with this appeal.

Stefanchick, the personal representative of the Virgil Goyette estate, filed a notice of review contesting the trial court's failure to grant her motion for "penalties and reasonable attorneys fees" under Minn. Stat. § 549.21 (1984). She asserts fees are justified for Wahlquist's "intentional delay and knowing assertion of nonsensical positions." Kopel, the personal representative of the Joanna Goyette estate, also filed a motion for attorney's fees before the trial court. The trial court has not yet ruled on either party's motion.

## ISSUES

1. What is the effect of appellant's failure to post a supersedeas bond as ordered by the trial court?

2. Did the trial court err in dismissing appellant's objection to the appointment of respondent Stefanchick as domiciliary foreign personal representative of the Virgil Goyette estate?

3. Did the trial court err in denying appellant's claim that he is entitled to 40 percent of Virgil Goyette's one-fourth share of the Joanna Goyette estate?

4. Is the trial court's failure to award attorney's fees properly an issue before this court?

5. Are respondents Stefanchick and Kopel entitled to fees and costs because of the frivolousness of this appeal?

## DISCUSSION

### I

█ Wahlquist contends it was an abuse of discretion for the trial court to deny his motion to stay the proceedings in the Joanna Goyette estate pending this appeal. Proceedings on probate orders are not stayed unless an appellant files a supersedeas bond under Minn.R.Civ.App.P. 108.01, subd. 1. Although ordered by the trial court to post such a bond, Wahlquist did not do so. His failure to do so prevents a stay of further proceedings in the trial court. *See* Minn.R.Civ.App.P. 108.03.

█ Respondent Stefanchick's motion to dismiss this appeal because of Wahlquist's failure to post a supersedeas bond was previously denied by this court. Respondents Stefanchick and Kopel both seem to confuse a supersedeas bond with an additional bond under the probate statute. Minn.Stat. § 525.714 (1984) provides in pertinent part:

> The appeal shall suspend the operation of the order, judgment, or decree appealed from until the appeal is determined or the court of appeals orders otherwise. *The court of appeals may require the appellant to give additional bond* for the payment of damages which may be awarded against him in consequence of the suspension, in case he fails to obtain a reversal of the order, judgment, or decree appealed from.

*Id.* (emphasis added). A bond under § 525.714 is granted by this court; a supersedeas bond under rule 108.01 is granted by the trial court. An additional bond under § 525.714 might have been warranted in this case, but respondents did not formally request an order for such a bond from this court.

### II

█ Wahlquist appeals from an order dismissing his objection to the appointment of Stefanchick as domiciliary foreign personal representative. The trial court held that under Minn.Stat. § 524.4–205 (1984), Wahlquist's objection was untimely because not filed within 60 days of the domiciliary foreign personal representative's filing of a notice of intent to exercise authority. Section 524.4–205 provides in pertinent part:

> The power of a domiciliary foreign personal representative * * * shall not be exercised if a resident creditor of the nonresident decedent has filed a written objection thereto within 60 days from the domiciliary foreign personal representative's filing in accordance with section 524.4–204.

*Id.* Section 524.4–204 provides that when a domiciliary foreign personal representative

files a certified copy of his appointment and of any official bond and a notice of his intention to exercise authority, the clerk of court "shall forthwith publish * * * a notice once a week for two consecutive weeks in a legal newspaper * * *." *Id.*

Wahlquist argues that his objection was timely because the 60-day period began to run a full week after the date of the last publication on June 28, 1984. His interpretation, however, ignores the express wording of the statute. The statute does not refer to the completion of publication, but to completion of the domiciliary foreign personal representative's *filing*. The trial court concluded that Stefanchick fulfilled the filing requirements on June 13, 1984 when her notice of intent to exercise authority was signed and filed by the trial court. We agree. Wahlquist had ample time within which to object to Stefanchick's appointment.

Indeed, as Stefanchick points out in her brief, Wahlquist should be deemed to have waived his objection when he submitted a formal claim to Stefanchick based upon his contingent fee contract with the deceased Virgil Goyette. The estate formally denied this claim. Wahlquist's failure to appeal this denial within two months should bar any claim he might have against the Virgil Goyette estate as a creditor based on his contract with the deceased. *See* Minn.Stat. § 524.3–806(a) (1984); *Matter of Estate of Gerhardt,* 369 N.W.2d 335 (Minn.Ct.App. 1985) (county's appeal of denial of its claim for reimbursement of medical benefits dismissed because not brought within two months).

### III

■ Wahlquist contends that the trial court erred in denying his claim that he should be considered an heir to the Joanna Goyette estate based upon his contract with Virgil Goyette, a named heir under the will. Wahlquist did not file a formal claim against the Joanna Goyette estate. In a letter to the estate dated October 26, 1984, he maintained that his 40 percent contingent fee "becomes due and payable when you present your final accounting." It was his opinion that when Virgil Goyette died, he (Wahlquist) became the "true and lawful owner" of 40 percent of Virgil Goyette's one-fourth interest.

Wahlquist seems to base his argument on Minn.Stat. § 524.2–701 (1984) which states that "[a] contract to make a * * * devise * * * can be established only by * * (3) a writing signed by the decedent evidencing a contract." *Id.* Again, his interpretation ignores the express language of the statute. The contract was not signed by the decedent Joanna Goyette but by one of her heirs. At the May 29th hearing, the court concluded that the contract was irrelevant to the Joanna Goyette estate and could not be viewed as a claim against that estate. We agree.

Wahlquist includes other issues in this appeal that are very difficult to understand. Indeed, the trial court repeatedly expressed its frustration:

THE COURT: Well, the Court wants to make the point that with incomplete sentences and rambling statements that don't ask the Court to do anything, the Court simply could not even comprehend Mr. Wahlquist's motions as to what he was asking, and I don't think the lack of comprehension is the Court's fault. I want to illustrate the fact that there are incomplete sentences that say nothing.

To the extent that we have been able to comprehend many of the arguments, they appear to be without merit.

■ Wahlquist insists that the former trial judge's removal of himself as judge in the Virgil Goyette matter was an abuse of discretion. The former trial judge removed himself from these cases after requested to do so by Stefanchick. It is well within a judge's discretion to remove himself from a case; this argument deserves no further discussion. Wahlquist also asserts that the trial court's dismissal of his petition as a creditor in the Virgil Goyette estate was an inappropriate amendment of the former judge's order for publication of probate notice. Although this argument is difficult to understand, Wahlquist seems to be re-

ferring to the October 1984 order issued by the former judge dismissing his petition for formal adjudication of intestacy. He apparently believes that the current trial judge unlawfully amended the former judge's order publication of a probate notice, but fails to recognize that no order for publication existed because his petition had been denied in all respects.

Wahlquist attempts to argue that Bauer and Pariseau were prejudiced by the trial court's order that he stop representing them. At both the February and May hearings, the trial judge indicated that he considered Wahlquist's representation of himself and of Bauer and Pariseau at the same time to be a gross conflict of interest. At the May hearing, he admonished Wahlquist for continuing this behavior and ordered him to cease representing them.

Wahlquist also asserts unintelligible "due process" arguments based upon the failure of the court in the Florida proceedings to apprise Bauer and Pariseau fully of such rights as they might have. Any such rights obviously are not for Wahlquist to assert. Moreover, as the trial court repeatedly pointed out, these claims should be raised in the Florida proceedings.

## IV

■ Both Stefanchick and Kopel assert that the trial court abused its discretion in not awarding attorney's fees against Wahlquist. A reviewing court must limit itself to a consideration of only those issues that the record shows were presented and considered by the trial court in deciding the matter before it. *Thayer v. American Financial Adviser, Inc.*, 322 N.W.2d 599, 604 (citing *Thompson v. Barnes*, 294 Minn. 528, 200 N.W.2d 921 (1972)). Examination of the record and transcript before this court indicates that Wahlquist filed his notice of appeal before the trial court had an opportunity to rule on respondents' motions for attorneys' fees. The issue is therefore remanded to the trial court for its consideration.

## V

■ Under Minn.Stat. § 549.21 (1984), this court may charge costs and reasonable attorney's fees when a party acts in bad faith or asserts a frivolous appeal. *Benedict v. Benedict*, 361 N.W.2d 429, 433 (Minn.Ct.App.1985). Wahlquist has blatantly dissipated the assets of two estates by his repeated assertion of meritless claims and misuse of legal procedures. This appeal has only served to further delay administration of the estates. His arguments are incomprehensible and even the most liberal interpretation of statute and case law renders them meritless. An award of attorneys' fees is warranted because his conduct has been extreme and vexatious. Respondents Kopel and Stefanchick are ordered to submit written proof of attorneys' fees expended on this appeal; Wahlquist is given 10 days to respond.

## DECISION

In the absence of a supersedeas bond, proceedings on probate orders are not stayed.

The trial court did not err in dismissing appellant's objections to the appointment of respondent Stefanchick as foreign domiciliary personal representative.

The trial court did not err in denying appellant's claims to 40 percent of one-fourth of the Joanna Goyette estates based upon appellant's contract with a deceased heir, Virgil Goyette.

Respondents motions for attorneys' fees are remanded to the trial court.

Appellant's assertion of this frivolous appeal entitles respondents to attorneys' fees.