In re The WELFARE OF J.H.D., R.M.D., and C.M.D., children.

Nos. C8–87–688, C2–87–783.

Court of Appeals of Minnesota.

Dec. 8, 1987.

Review Denied Feb. 12, 1988.

Lyndon L. Kratochwill, Grant Co. Atty., Elbow Lake, for respondents.

Kenneth L. Hamrum, Morris, for Father.

Jeanne L. Bringgold, Wheaton, for Mother.

Dennis Helseth, Elbow Lake, for children.

Joyce Aamot, Wendell, guardian ad litem.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

An adjudication of neglect was entered against appellant parents on December 3, 1983. Their children, RD, JD and CD were placed in foster care in July, 1984; the parents regained custody in August 1984. The parents separated in June of 1985, and the children remained living with the mother. After substantiated reports of neglect in July 1985, the father obtained legal and physical custody. In September 1985, the children were placed in emergency foster care. February 19, 1987, the trial court

issued an order terminating both the mother's and the father's parental rights. March 31, 1987, the trial court affirmed in part and denied in part the mother's and the father's respective motions for new trials. The parents appeal. We affirm.

## FACTS

Appellants were married in October 1980. They have three children, RD born May 11, 1981, JD born May 1, 1982, and CD, born October 27, 1983. The mother is now 25 years old, and the father is 28. From 1981 to 1983, the parents engaged in farming. In 1983, they moved to Elbow Lake.

In an order of December 15, 1983, RD, JD and CD were adjudicated to be neglected children. The trial court found the children were repeatedly left unattended for up to an hour, while the parents were away from home; on numerous occasions, JD had been tied to the bed by his ankle; and CD, who was only seven weeks old at the time of the order, had been left in a room alone, with the door closed, when both parents were away from home.

The court found the children were without proper parental care because of the faults and habits of their parents. The parents admitted on the record that the children were neglected children. The parents retained physical custody, subject to county supervision and monitoring. The public health nurse commenced visiting the mother one or two times weekly. The father was generally not at home during these visits. Among the topics the nurse discussed with the mother were home management and nutrition.

On July 19, 1984, the children were placed in foster care, after the police stopped a motorcycle on which the parents and all three children were riding. The children were returned to the parents one month later. In December 1984, the county received a report that the situation had deteriorated in the household. Reportedly, the house reeked of urine, and dog feces were on the floor. Although the father was aware the house was unclean, he apparently did nothing to remedy the situa-

tion, and on occasion merely stepped over dog feces on the floor.

On March 6, 1985, the trial court ordered that the parents should have physical and legal custody subject to continued public health nursing services. During this time, the mother had the primary duty of caring for the children, because the father worked and was rarely home during the day.

In May 1985, the mother separated from the father, moving to a new home. By agreement of the parents, the children went to live with the mother.

While the children lived with their mother, some problems were reported. The mother had no stove, and cooked on a hotplate. The children had no beds, and slept on the floor. On June 4, 1984, a babysitter reported to the county that there was an inadequate supply of diapers, and that the children were not properly dressed for the weather. June 30, 1985, RD woke to find her mother gone, and walked about one mile to her father's house, where she stayed. In July, a public health nurse discovered blisters on RD's knees, which RD alleges were caused when her mother burned her with a cigarette.

On July 26, 1985, after a review hearing, the trial court ordered that the father have physical custody of the children, subject to supervised visitation by the mother. There was testimony that while the children were with their father, the dishes tended to be clean and there was more food in the refrigerator than when the mother ran the home, but that the house was still filthy and reeked of urine.

On September 6, 1985, the father permitted the mother to have unsupervised visitation with the children, in violation of the July 26, 1985, order. The mother took the children to the home of her boyfriend. Meanwhile, the father drank a substantial quantity of beer. That evening, the father took his gun to the house of the mother's boyfriend. He attempted to get into the house, but the mother closed the door. The mother testified that the father could see the children sleeping on a couch near the front door, but nevertheless fired one

shot at the door. Then he allegedly fired three other shots as he entered and pursued the mother's boyfriend, who escaped through a back door. The mother was hit in the chest by a bullet fragment. The boyfriend received an injury to the leg.

The sheriff later found the father at his home, after he had attempted to kill himself by a gunshot in the chest. The sheriff noted that at the time, the house was unclean and a pile of laundry in the basement appeared to be growing "mold." After the shooting incident, the children were placed in emergency foster care. The father was sentenced to imprisonment on January 7, 1986. His target release date is May 2, 1988.

An amended petition for termination of parental rights was dated May 22, 1986. At the hearings October 7, 8, 28 and 29, documentary evidence was introduced about the parents and their parenting skills and maturity, as well as about the children, their development and their relationship to their parents.

Witnesses testified that neither mother nor father had been able to provide the children with adequate cleanliness, food, supervision, and prompt medical care, among other things. There was testimony the mother had given alcohol to RD and CD. There was testimony both parents had been remiss in obtaining prompt medical care for minor ailments of the children. Testimony indicated the mother intentionally burned RD with a cigarette, and JD had a discolored cheek. The cause of JD's injury was unexplained, but which a physician thought was caused by a blow. Although there was no testimony the father had ever physically abused the children, and the mother testified father had never struck her or the children, the mother did testify the father has trouble controlling his temper at times. Both parents agree they are chemically dependent, and have undergone treatment.

In its findings of fact and conclusions of law, the trial court determined the parents either refused or neglected to provide for their children's necessary, physical, educational and emotional needs. The court found the children were neglected and in foster care, and that it was not possible to determine when the parents would be able to assume parental responsibilities. Therefore, the court found, it is in the best interests of the children, in order to provide them with a stable home environment, that the parents' rights be terminated. The parents appeal the denial of their motions for new trial following the order terminating parental rights.

## ISSUES

1. Did the amended petition for termination contain sufficient specific facts to give the father adequate notice to prepare a defense?

2. Did the trial court improperly shift to the parents the burden of proof of chemical dependency?

3. Were the social service departments efforts to help the parents "reasonable?"

4. Did the trial court erroneously admit hearsay testimony?

5. Were the statutory grounds for termination of parental rights proven with clear and convincing evidence?

## ANALYSIS

■ In a proceeding for the termination of parental rights, the burden of proof is on the petitioner, and is subject to the presumption that a natural parent is fit and suitable to be entrusted with the care of a child. *Matter of Welfare of Chosa*, 290 N.W.2d 766, 769 (Minn.1980). Although deference is given to the trial court, the reviewing courts will exercise great caution in termination proceedings. *Id.*

■ Evidence relating to termination must address conditions existing at the time of the hearing, and it must appear that the present conditions of neglect will continue for a prolonged, indeterminate period. *Id.* The existence of a neglect order, alone, does not support issuance of a termination order. *Id.*

The standard of review in a termination case is whether the findings of fact are supported by substantial evidence and are

not clearly erroneous. *Matter of Welfare of Clausen,* 289 N.W.2d 153, 156 (Minn. 1980).

## I.

### Adequacy of the Petition

■ The father contends the amended petition for termination did not contain information sufficient to apprise him of the allegations to enable him to prepare a defense. In his motion for a new trial, the father does not set out the inadequacy of the petition as a basis for new trial.

Normally, the reviewing court must limit itself to a consideration of only those issues the record shows were presented to and considered by the trial court in deciding the matter before it. *Thayer v. American Financial Advisors, Inc.,* 322 N.W.2d 599, 604 (Minn.1982). The petitioner here alleges the father did not raise the issue of sufficiency of the petition below. Even if the father effectively raised the issue, we hold the allegations in the petition were sufficient to enable the father to prepare his defense.

The petition sets forth allegations against the mother and against the parents, but not specifically against the father. However, the petition alleges that the children are neglected, that the parents failed to follow the recommendations of the foster placement plan, and that the parents have to provide evidence of their concern for the welfare of the children. The petition alleges that the county's reasonable efforts following the determination of neglect in 1983 failed to correct the conditions. We hold these allegations are sufficiently specific to apprise the father of the claims against him, especially in view of the fact this matter has been continuing for years, and the father was aware of numerous prior allegations of neglect.

## II.

### Reasonable Efforts

The parents contend the county failed to support the allegation in the amended petition, that reasonable efforts were made to address the problems raised in the 1983 determination of neglect. Minn.Stat. § 260.221(b)(5) (1986) lists, as one of the conditions that must exist before a parent's rights may be terminated, that

following upon a determination of neglect or dependency, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination * * *.

Appellants claim petitioner did not prove there was a determination of neglect or dependency, and that a rehabilitative case plan designed to correct conditions of neglect or dependency was in effect. *See Matter of Welfare of J.J.B.,* 390 N.W.2d 274, 280–81 (Minn.1986) (interpreting Minn. Stat. § 260.221(b)(5)).

■ Efforts to help parents generally are closely scrutinized, because public agencies may transform the assistance into a test to demonstrate parental failure. *Matter of Welfare of E.L.H.,* 356 N.W.2d 795, 798 (Minn.Ct.App.1984) (Crippen, Judge, concurring specially).

■ The trial court found that

despite the intensive and extensive efforts of Grant County, [the parents] have failed to develop basic minimal skills in parenting, have continuously treated the offers of assistance as unnecessary and as intrusions into their lives * * *.

This finding is supported by the evidence.

Here, the mother testified she thought she obtained the necessary help. The mother had the benefit of nutrition lectures, information on managing the home, hygiene, and parenting classes, among others. The public health nurse came to the home one or two times a week to discuss home management. The mother admitted that sometimes, the classes would instill in her the motivation for improved housekeeping and parenting for a few days, but that she did not continue to be motivated. The father was generally not home when the public health nurse visited.

Both parents failed to complete court ordered counseling in 1984, and later neither parent made regular contact with social workers as required by the foster care plan. Both parents signed the court ap-

proved foster placement plan and a rehabilitation plan, which set goals for the parents and stated means to achieve the goals.

We hold the trial court did not err by concluding the petitioner proved that reasonable efforts, under the direction of the court, failed to correct the conditions relating to the termination.

### III.

*Chemical Dependency*

Both parents claim chemical dependency as an explanation for their behavior, and contend that because both of them have recognized they are chemically dependent, and both are seeking treatment, the court erred by finding that conditions leading to the neglect and dependency finding will continue for a prolonged indeterminate period. Minn.Stat. § 260.221; *see Chosa*, 290 N.W.2d at 769 (record must support conclusion that parents' present condition will be prolonged and indeterminate).

Here, both parties testified they are chemically dependent. The father has completed chemical dependency program in prison. The mother has completed inpatient chemical dependency treatment.

■ Nonexistence of chemical dependency is not a prerequisite that must be shown by a petitioner before parental rights may be terminated. Chemical dependency maybe a rational explanation for some factors on which courts rely in terminating parental rights, but does not constitute a complete defense to behavior harmful to the best interests of children.

■ The parents introduced no evidence to show how chemical dependency treatment would improve their parenting skills. Here, the trial court did not make a finding whether the parents are chemically dependent. It found there was no evidence to suggest how the alleged chemical dependency affected parenting skills. The court stated that the claimed chemical dependency did not change the assessment that the conditions leading to the neglect and dependency finding would continue for a prolonged and indefinite period of time.

Absent a showing by the parents that chemical dependency caused all the problems leading to termination, and that treatment of the chemical dependency would lead to improved parenting skills in a reasonable and ascertainable period of time, the petitioner here had no duty to disprove the allegation of chemical dependency offered as a defense in the termination proceeding.

### IV.

*Hearsay Testimony*

■ The father contends the trial court erred by admitting testimony of Joyce Pesch, the director of Grant County Social Services, about reports that were not introduced into evidence. He acknowledges that the reports fall within the business records exception to the hearsay rule. Minn.R.Evid. 803(6). The father's attorney admitted at trial that the documents were business records, and thus admissible. However, he contended that, since the documents were not admitted, Pesch should not have been allowed to testify from them.

Error may not be predicated on a ruling which admits evidence unless a substantial right of the party is affected. Minn.R. Evid. 103(a). Here, although he alleges the quantity of hearsay testimony was sufficient to unfairly prejudice him, the father points to only one specific instance of alleged prejudice. He contends he was prejudiced because the guardian ad litem testified the father left the children alone when he got drunk. The father points out that, on cross-examination, the guardian ad litem admitted the record did not indicate whether the children were left alone. We do not find substantial prejudice to the father. The guardian ad litem admitted that it was her unfounded conclusion the father left the children alone. The trial court did not err by admitting the testimony.

### V.

*Clear and Convincing Evidence*

■ Both parents contend there was not clear and convincing evidence to support the termination of parental rights.

The standard of review in a termination case is whether the findings are supported by substantial evidence and are not clearly erroneous. *Clausen*, 289 N.W.2d at 156.

Here, the trial court made detailed findings, based on testimony that stretched over four days of trial. From those findings, the trial court reached the following conclusions, among others: that petitioner proved the parents substantially, continuously or repeatedly refused or neglected to comply with the duties imposed on the parent-child relationship, including providing their children with necessary food, clothing, shelter, education, and other care; that the petitioner proved that the parents are palpably unfit to be a party to a parent and child relationship because of a consistent pattern of specific conduct and specific conditions determined by the court to be permanently detrimental to the children; that petitioner proved that reasonable efforts failed to correct the conditions leading to the determination of neglect or dependency; that the petitioner proved the children are neglected and in foster care; that the interests of the children require that parental rights be terminated, and that the childrens' rights to placement in a stable, nurturing home outweigh the parents plea to wait longer.

The evidence indicates the father left the care of the children up to the mother when they were living together, and then had a babysitter when he had sole physical custody. Under neither conditions was the home clean. There was evidence of unexplained injury to JD, and that the parents failed to get prompt medical attention for a skin condition of RD.

There was evidence of physical abuse. There was evidence the children were not kept clean, had inadequate clothing and inadequate food, and lived in an unhygienic environment. There was evidence the children were often left unattended for lengthy periods of time. The father testified that sometimes he got home, and just stepped over the dog feces on the floor in the house. Although he berated his wife for her lack of housekeeping, he did nothing about these conditions.

For years, the parents have been alerted to the fact they have a problem. Neither parent is now in a position to take the children. The mother asks for six more months or a year. The father's target release date from prison is in May of 1988. It is not clear when he would be able to care for the children after his release.

Expert testimony was that the indications did not hold much promise for either parent's rapid improvement with respect to maturity or parenting skills. This testimony was supported by the parents' failure to progress in improving their parenting skills since the determination of neglect.

The trial court's findings of fact were supported by the evidence. We find no error.

### DECISION

The amended petition for termination alleged facts adequate to enable the father to prepare a defense. The state was not required to prove the parents were not chemically dependent. The social service department made reasonable efforts to help the parents. The trial court's admission of alleged hearsay evidence was not error. The trial court did not err by finding the statutory grounds for termination of parental rights were supported by clear and convincing evidence.

Affirmed.