*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-0889**

Joseph Molesky, et al.,
Respondents,

vs.

John L. Trebesch, et al.,
Defendants,
Sheila P. Sabas, et al.,
Appellants.

**Filed February 1, 2016**
**Affirmed**
**Stauber, Judge**

Wright County District Court
File No. 86CV131980

Anthony Gabor, Richard L. Morris, Morris Law Group, P.A., Edina, Minnesota (for respondents)

Jeffrey W. Lambert, Jeffrey W. Lambert, P.A., Wayzata, Minnesota (for appellants)

Considered and decided by Stauber, Presiding Judge; Cleary, Chief Judge; and Randall, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**STAUBER**, Judge

Appellants argue that the district court abused its discretion by entering the default judgment and by denying their motion to vacate the default judgment based on mistake and excusable neglect.  Because appellants are unable to establish a reasonable excuse for their failure to act, we affirm.

**FACTS**

This action arises from a dispute related to respondents Joseph and Angela Moleskys' purchase and construction of a residential home.  In October 2012, Joseph Molesky and defendant John Trebesch, acting as Chief Executive Officer of defendant Design Builders, LLC (Design Builders), entered into a purchase agreement for the construction of a home on property located at 713 Overlook Drive in Buffalo.  The property was owned by defendant Local Holdings, LLC (Local Holdings), which is also owned by Trebesch.  The listing agent for the property was appellant Sheila Sabas of appellant AAA-RIT, Inc. (AAA-RIT).

In April 2013, respondents brought suit against several defendants, including Trebesch, Design Builders, and AAA-RIT.  Respondents later filed a second amended complaint joining Sabas and Local Holdings as defendants.  The second amended complaint included allegations of fraud, deceptive trade practices, breach of contract, and civil conspiracy.

After receiving the second amended complaint, Sabas contacted attorney Timothy Netzell about representing her and AAA-RIT.  Netzell then sent a conflict-of-interest

2

letter to Local Holdings, Design Builders, Trebesch, Sabas, and AAA-RIT stating that (1) he had represented Local Holdings in a variety of matters, including the real-estate transaction with respondents; (2) the purpose of the letter was to discuss the possibility of Netzell simultaneously representing them in the lawsuit against respondents; (3) a conflict of interest could arise if he represented all of them; (4) he recommended that the defendants retain separate counsel; and (5) despite his recommendations, he could represent all of them if each defendant consented to simultaneous representation. Sabas was the only defendant to sign and return the acknowledgement and consent form.

On June 27, 2013, Netzell submitted an answer on behalf of Trebesch, Design Builders, and Local Holdings. A few days later, Netzell withdrew as counsel for those defendants. Sabas and AAA-RIT failed to submit an answer to respondents' complaint.

On January 9, 2014, respondents moved for default judgment. At the hearing on respondents' motion, Sabas appeared pro se and requested a continuance, alleging that she needed more time to prepare for the hearing because she was out of town for a long period of time and that she believed Netzell represented her and was handling her defense. She also alleged that Netzell withdrew from representation without informing her. The district court denied Sabas's request.

In April 2014, the district court granted respondents' motion and entered default judgment against several defendants, including Sabas and AAA-RIT.[1] Shortly thereafter, appellants moved to vacate the default judgment. To support the motion, appellants

---

[1] Sabas and AAA-RIT will hereinafter be collectively referred to as "appellants."

claimed that two email communications involving Sabas and Netzell between September and December 2013 demonstrate that Netzell represented appellants in the lawsuit. Appellants argued that because they reasonably believed that Netzell represented them, the default judgment against them should be vacated on the grounds of their reasonable mistake or excusable neglect.

The district court found that the emails referenced by appellants "do not mention the lawsuit or provide any information related to the lawsuit other than the address of the property at issue. Instead, the emails appear related to [appellants'] role as real estate broker." Thus, the district court found that "[n]either email indicates an attorney client relationship between [appellants] and Netzell." The district court also found that appellants "did not pay a retainer fee, sign a retainer agreement, or receive bills or invoices from Netzell describing legal work performed and demanding payment." And the district court found that appellants failed to contact Netzell to "explicitly confirm that he represented them." Therefore, the district court denied the motion to vacate the default judgment because appellants failed to show that their mistake was reasonable. This appeal followed.

## **D E C I S I O N**

Appellants challenge the district court's denial of their motion to vacate the default judgment. A district court's ruling on a motion to vacate a judgment is reviewed for an abuse of discretion. *Charson v. Temple Israel*, 419 N.W.2d 488, 490 (Minn. 1988). "A district court abuses its discretion if its findings are unsupported by the evidence or its

4

decision is based on an erroneous view of the law." *Kern v. Janson*, 800 N.W.2d 126, 133 (Minn. 2011).

A district court may grant relief from a final judgment for "[m]istake, inadvertence, surprise, or excusable neglect" or for "[a]ny other reason justifying relief from the operation of the judgment." Minn. R. Civ. P. 60.02(a), (f). A party seeking relief from a default judgment under rule 60.02 must establish four requirements: (1) a reasonable excuse for the failure to act; (2) a reasonable defense on the merits; (3) a showing of due diligence after notice of entry of the default judgment; and (4) a showing of no substantial prejudice to the opposing party resulting from the vacation of the judgment. *Coller v. Guardian Angels Roman Catholic Church*, 294 N.W.2d 712, 715 (Minn. 1980). To obtain relief under rule 60.02, all four of the factors must be present. *Charson*, 419 N.W.2d at 491. The burden of proof rests on the party seeking relief. *City of Barnum v. Sabri*, 657 N.W.2d 201, 205 (Minn. App. 2003).

We begin our analysis by discussing the first factor, a reasonable excuse for the failure to act. Generally, "[i]t is for the [district] court to determine whether the excuse offered by a defaulting party is reasonable." *Howard v. Frondell*, 387 N.W.2d 205, 208 (Minn. App. 1986), *review denied* (Minn. July 31, 1986). Neglect of a party which leads to entry of a default judgment is inexcusable and is a proper ground for refusal to reopen a judgment. *Id.* But if neglect has been purely that of counsel, courts are reluctant to punish an innocent client. *Charson*, 419 N.W.2d at 491.

Appellants argue that because they believed that Netzell was representing them and had relied on him to submit an answer on their behalf, they are reasonably excused

5

for failing to act. To support their claim, appellants cite *Finden v. Klaas*, 268 Minn. 268, 128 N.W.2d 748 (1964). In that case, an attorney had reassured his client that he would answer the complaint and tender a defense, and the client relied upon the attorney's assurances that the answer had indeed been filed. *Id.* at 269, 128 N.W.2d at 749. Plaintiff's attorney then advised both the client and his attorney that the matter was scheduled for a default hearing because no answer had been filed. *Id.* Neither made an appearance, and default judgment was entered. *Id.* at 269-70, 128 N.W.2d at 750. In reversing the default judgment, the Supreme Court stated:

> [client] entrusted the matter entirely to his attorney and relied upon assurances that he was being protected in resisting plaintiffs' claims. . . . Under these circumstances, it would be difficult indeed to charge [client] himself with such indifference to the proceedings as would amount to inexcusable neglect within the contemplation of the rule.

*Id.* at 271-72, 128 N.W.2d at 750-51.

Unlike in *Finden*, Netzell never represented appellants or assured appellants that he was representing them. Netzell also did not communicate with appellants about the merits of the case, nor did he bill appellants for legal services. In fact, appellants never paid Netzell for any services. Although Sabas signed Netzell's conflict-of-interest form, she did nothing to confirm that Netzell was acting on her behalf or representing her. And, the record reflects that no other party signed the conflict-of-interest form. Moreover, when Netzell withdrew from representing Trebesch, Design Builders, and Local Holdings, appellants did not receive notice of Netzell's withdrawal. Finally, Sabas

6

admitted at the January 13, 2014 default-judgment hearing that she did not sign a retainer agreement.

Appellants argue that a retainer agreement was unnecessary and that the email exchanges between Sabas and Netzell demonstrate a reasonable belief that Netzell was representing them. We disagree. A review of the email exchanges indicates that they were completely unrelated to the lawsuit. In the first email, dated September 9, 2013, Sabas wrote: "Looking for updates on 106 Lookout Pt (John never sent me a signed copy of the cancellation) 713 Outlook Dr and 709 Overlook Dr." Netzell responded: "I know nothing new at this point." Sabas then emailed Netzell again on December 10, 2013. With "713 and 709 Overlook Dr" in the subject line, Sabas simply asked Netzell: "Any update on these?" Netzell replied: "I have not heard a thing on either property. If anything comes up, I'll let you know right away." As the district court found, these emails do not mention the lawsuit, do not provide any information related to the lawsuit, and do not otherwise indicate an attorney-client relationship. Although the emails recite the address of the property involved in this lawsuit, the emails also reference other addresses and appear to be related to appellants' status as the real0-estate broker for the properties.

Finally, we acknowledge that while the lack of a retainer agreement may not definitively demonstrate a lack of an attorney-client relationship, it is a compelling factor that, when taken together with the other facts and circumstances, supports the district court's conclusion that appellants' mistake was not reasonable. Sabas is a seasoned realtor who knew or should have known that she was required to respond to a lawsuit.

Therefore, the district court did not abuse its discretion in determining that appellants did not have a reasonable excuse for failing to act.

Because appellants are unable to establish a reasonable excuse for their failure to act, they cannot establish all of the factors that are necessary for relief under rule 60.02. *See Imperial Premium Fin., Inc. v. GK Cab Co.*, 603 N.W.2d 853, 857 (Minn. App. 2000). Thus, we need not discuss the other three factors necessary for relief from a default judgment. Moreover, appellants make no claim that there is insufficient evidence to support an award of damages. *See Wiethoff v. Williams*, 413 N.W.2d 533, 537 (Minn. App. 1987) (stating that a default judgment may be vacated under rule 60.02 where there is not sufficient evidence to support an award of damages). Accordingly, the district court did not abuse its discretion by denying appellants' motion to vacate the default judgment.

Appellants also challenge the district court's decision to grant respondents' motion for default judgment. A district court should deny a motion for default judgment when the defendant has established the following four factors: (1) a reasonable excuse for the failure to act; (2) a reasonable defense on the merits; (3) lack of prejudice to the opposing party; and (4) action with due diligence after the entry of judgment. *Coller*, 294 N.W.2d at 715. These are essentially the same factors a district court must consider when deciding whether to vacate a judgment under Minn. R. Civ. P. 60.02. *Black v. Rimmer*, 700 N.W.2d 521, 526 (Minn. App. 2005). As discussed above, appellants are unable to establish a reasonable excuse for their failure to act. Because appellants are unable to

8

establish all four factors, the district court did not abuse its discretion by granting respondents' motion for default judgment.

**Affirmed.**