LESLIE G. MORTON AND OTHERS v. BOARD OF
COMMISSIONERS OF RAMSEY COUNTY
AND ANOTHER.
STATE OF MINNESOTA AND ANOTHER,
INTERVENORS.

223 N. W. 2d 764.

October 22, 1974—No. 45366.

*Stolpestad, Brown & Smith, Russell C. Brown,* and *Alan K. Ruvelson, Jr.,* for appellants.

*William B. Randall,* County Attorney, and *Thomas M. Quayle, Steven C. DeCoster,* and *Gary A. Davis,* Assistant County Attorneys, for respondents.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *Jerome L. Getz* and *Paul A. Strandberg,* Special Assistant Attorneys General, for intervenors.

SHERAN, CHIEF JUSTICE.

In this proceeding to enjoin the construction of an addition to the St. Paul-Ramsey Hospital and to compel the Ramsey County Board of Commissioners to submit the construction issue to the electorate, all parties agreed as to the essential facts and moved for summary judgment in the Ramsey County District Court, Judge Stephen L. Maxwell presiding. Appellants now con-

tend that the judgment entered in accordance with the trial judge's order[1] made in response to these motions and adverse to appellants' view of things should be reversed because the pertinent state statutes were erroneously construed and unconstitutionally applied. We affirm.

Appellants, plaintiffs in the district court action, are resident taxpaying voters of Ramsey County. Defendant-respondent Ramsey County Hospital and Sanitarium Commission is a legislatively created entity which administers the St. Paul-Ramsey Hospital, a public facility located in St. Paul, Minnesota, and owned jointly by the city and the county. Intervenors aligned with defendants-respondents are the State of Minnesota and the Gillette Hospital Authority, an entity established by L. 1973, c. 540, to operate a medical facility for children known as the Gillette State Hospital, but more commonly referred to as Gillette Children's Hospital.

The primary object of the injunction proceeding is to compel voter approval of the planned addition to the St. Paul-Ramsey Hospital which will give it the capability of affording treatment

---

[1] The lower court ordered summary judgment in light of these "findings":

"1. That Minnesota Laws 1974, Chapter 581, is constitutional and does not deny to plaintiffs and all other voters and taxpayers of the County of Ramsey equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution.

"2. The Board of Commissioners of Ramsey County is not required to submit to the voters of Ramsey County the question of constructing an addition to the St. Paul-Ramsey Hospital in this case as required by Minnesota Statutes, Sections 376.009 to 376.07.

"3. The Board of Commissioners of Ramsey County is permitted to sell general obligation bonds of the county in an amount not to exceed $5,600,000 in accordance with Minnesota Laws 1974, Chapter 581.

"4. The Board of Commissioners of Ramsey County is required to submit to voters of Ramsey County the question of constructing an addition to the St. Paul-Ramsey Hospital in this case as required by Minnesota Statutes, Sections 376.009 to 376.07 as to costs, including equipment, in excess of $5,600,000."

for crippled children now cared for only at the site of Gillette Children's Hospital.

Appellants contend that the situation is controlled by Minn. St. 376.009 to 376.07,[2] statutes applying generally to the construction of county hospitals, which explicitly require submission of proposals for the purchase, erection, or construction of hospital buildings to a "vote of the people" in the manner prescribed by those laws.

---

[2] These sections provide that counties may own and operate a hospital (§ 376.009), may acquire land for hospital purposes (§ 376.01), may construct, equip, and maintain hospital buildings (§ 376.02), and may submit to the electors in the county the question of purchasing, erecting, and constructing hospital buildings (§ 376.03).

Section 376.04 provides, in pertinent part, that: "The question of purchasing, erecting and constructing hospital buildings shall be submitted to the qualified voters of any county at a general election and placed upon a separate ballot. This election shall be called by a resolution of the county board which states the time of the election, that a county hospital is proposed to be established, the proposed location thereof, the same to cost, including equipment, not to exceed the sum set forth in the resolution. Upon passage of the resolutions the county auditor forthwith notifies each town, city, or village clerk in the county that the question of erecting hospital buildings will be voted upon at the time stated in the resolution, the election to be controlled by the existing election laws."

Section 376.05 provides that, upon a favorable vote of the electors, the county shall purchase, erect, and construct the hospital.

Section 376.06 concerns the administration of the hospital and, in subdivision 1, contains the following provision: "Sections 376.01 to 376.06 do not permit any county board to purchase, erect and construct any such hospital buildings or to pay therefor without first submitting the question to the vote of the people. No such purchase, erection or construction of buildings or payment therefor may be made unless a majority of the electors voting upon the proposition vote in favor thereof."

Section 376.07 provides that, if an addition to the hospital was authorized by the electors and the addition cannot be completed within the authorized cost or if alterations are needed to complete the addition, the county board may be authorized to expend the additional money necessary either by a vote or petition of the electors.

Defendants, supported by intervenors, contend that §§ 376.009 to 376.07 do not apply in the present situation and that, furthermore, the legislature, by enacting L. 1974, c. 581,[3] has manifested

---

[3] L. 1974, c. 581, reads: "An Act Relating to Ramsey County; Authorizing the Board of County Commissioners to Issue General Obligation Bonds for Remodeling and New Construction Costs at St. Paul-Ramsey Hospital in Conjunction with the Gillette Hospital Authority; Amending Minnesota Statutes, 1973 Supplement, Section 250.05, Subdivision 4.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

"Section 1. Subdivision 1. The board of county commissioners of Ramsey county is authorized to sell general obligation bonds of the county in an amount not to exceed $5,600,000 for remodeling and equipping of certain areas within Saint Paul-Ramsey hospital and architectural and professional services therefor, and for the construction and equipping of an addition to Saint Paul-Ramsey hospital in conjunction with the Gillette hospital authority and architectural and professional services therefor.

"Subd. 2. The board shall pledge its full faith and credit and taxing powers for the payment of such bonds and interest thereon, and issue and secure same in one or more series in accordance with Minnesota Statutes, Chapter 475, except that no election shall be required and such bonds shall not be included in computing the net debt of the county under any law, and the taxes required to be levied for payment of such bonds shall not be subject to any limitation of rate or amount.

"Sec. 2. The board of county commmissioners may use any other moneys in the county treasury not otherwise specifically dedicated for the purpose of this act.

"Sec. 3. Any such remodeling or construction shall be subject to the certificate of need act as provided in Minnesota Statutes, Sections 145.71 to 145.83.

"Sec. 4. Minnesota Statutes, 1973 Supplement, Section 250.05, Subdivision 4, is amended to read:

"Subd. 4. The authority, acting through its board of directors, may contract with the governing body and the owners of the Ramsey county hospital and of any other hospital or institution, for the joint maintenance and operation of the Gillette children's hospital in conjunction with existing or contemplated facilities at the Ramsey county hospital. Contracts may include agreements for the joint employment and utilization of personnel, the joint purchase of supplies and equipment, and joint construction, acquisition, or leasing of space for offices, outpatient

a clear intent that an election with respect to the proposed construction should not be required.

In response to this claim, appellants argued in the trial court that so construed, L. 1974, c. 581, would deprive plaintiffs and others similarly situated of due process and equal protection rights assured by the Federal Constitution's Fourteenth Amendment. In addition, appellants are urging in this court, although they did not so argue in the district court, that L. 1974, c. 581, embraces more than one subject, in violation of Minn. Const. art. 4, § 27, and constitutes an improper delegation of legislative authority by granting to the board of commissioners the power to approve or disapprove legislation which amends statutory authority granted to the Gillette Hospital Authority, a state agency and political subdivision of the state.

Appellants argue that the crux of the controversy is whether the board of commissioners must comply with Minn. St. 376.009 to 376.07 and submit to the voters for their approval the question of constructing an addition to St. Paul-Ramsey Hospital, or whether the board of commissioners by special legislation authorizing the issuance of general obligation bonds to help finance that construction is by implication also exempted from the requirements of §§ 376.009 to 376.07, under which all county boards must otherwise operate with respect to county hospitals.

Assessment of the issues here presented requires some back-

---

facilities, operating rooms, and other medical facilities for use in training in the care and treatment of crippled and handicapped children, the operation of a brace shop, and the conduct of patient education programs. No contract shall, however, provide for the expenditure of funds for additional patient bed capacity. The authority shall be subject to the certificate of need act provided in sections 145.71 to 145.83. In any case wherein a certificate of need is required, the authority shall, at the time of application, notify the house committee on appropriations and the senate finance committee, whose opinion shall be advisory only.

"Sec. 5. This act shall take effect upon its approval by the board of county commissioners of Ramsey county, and upon compliance with Minnesota Statutes, Section 645.021."

ground information concerning the St. Paul-Ramsey Hospital and the effort to make it a situs of functions previously performed solely at Gillette.

Ramsey County was first authorized to establish a public hospital in 1872.[4] Since that time, the hospital facilities have been jointly owned by the city of St. Paul and the county of Ramsey with a separate board, appointed in conformity with legislative direction by the elected officials of these two governmental subdivisions, in charge of operations.[5] Since 1969, the legislatively created operating entity has been the Ramsey County Hospital and Sanitarium Commission funded by the St. Paul city council and the Ramsey County board of commissioners.[6]

In 1973, the legislature created the Gillette Hospital Authority[7] and authorized it to assume control of Gillette Children's Hospital. In that same year, the legislature authorized the Ramsey County board of commissioners to issue and sell general obligation bonds in an amount not to exceed $400,000, to plan and design an addition to St. Paul-Ramsey Hospital in conjunction with the Gillette Hospital Authority.[8]

At its 1974 session, the legislature received and considered preliminary plans, which had been developed by architects pursuant to contracts with Ramsey County, the Ramsey County Hospital and Sanitarium Commission, and the Gillette Hospital Authority, for an addition to St. Paul-Ramsey Hospital. Having done so, the legislature appropriated $3.9 million to the Gillette Hospital Authority to be used for construction of the planned addition[9] and adopted L. 1974, c. 581,[10] the effect of which is now in controversy.

---

[4] See L. 1902, c. 99; L. 1929, c. 371.

[5] See L. 1929, c. 371; L. 1957, c. 938; L. 1973, c. 662; L. 1974, c. 435.

[6] See L. 1969, c. 1104, as amended by L. 1973, c. 662, and L. 1974, c. 435.

[7] L. 1973, c. 540.

[8] L. 1973, c. 719.

[9] L. 1974, c. 541.

[10] See footnote 3, *supra.*

As of April 1974, when L. 1974, c. 581, was enacted, it was anticipated that the Medical Research Foundation, a private organization, would contribute some $2 million toward construction of the planned addition.

Acting on its interpretation of L. 1974, c. 581, the Ramsey County board of commissioners has: (a) Given preliminary approval to the issuance of $5.6 million of general obligation bonds to finance all or part of its share of the cost of the hospital addition; (b) approved design development and authorized the architect to proceed with the preparation of working drawings and specifications necessary for bids and construction contracts; and (c) contemplated the letting of bids and commencement of construction as of November 1974, without reference to the voters of the county.

Because of the result we reach today it is not necessary that we consider respondent Ramsey County's argument that, because of the statutory history above recited, St. Paul-Ramsey Hospital is sui generis in our statutes governing county hospitals. We advance no opinion on the merits of that contention. Instead, we choose to rest decision on a construction of L. 1974, c. 581.

1. The Ramsey County board of commissioners acts in conformity with the authority given by L. 1974, c. 581. Although the question is not as free from doubt as would be preferred, the legislature appears to have intended to exempt this construction project from any referendum requirement found in existing statutes. These reasons support this view:

(1) By appropriating $3.9 million to the Gillette Hospital Authority the legislature demonstrated its approval of the preliminary plans and made a substantial commitment of state funds which would not ordinarily be made dependent on conditions not clearly stated;

(2) The authorization for a general obligation bond issue by Ramsey County without the voter approval generally required in such circumstances indicates that the legislature was satisfied that the interests of the voters and taxpayers of Ramsey County

would be adequately protected by the board of commissioners, without whose approval the indebtedness could not be incurred;

(3) While authorization for the construction of a building and the incurring of indebtedness to pay for the construction are distinct and separate concepts, it would ordinarily be unreasonable to authorize a governmental subdivision to issue bonds and incur debt expense for a project which could not be initiated without voter approval of the construction to be financed.

The reverse situation, considered in the cases and attorney general opinions cited by appellants,[11] is significantly different. For the legislature to say to a governmental subdivision, "You are authorized to construct a hospital, but you cannot borrow funds to pay for it without voter approval" seems logical and consistent with practical concerns. But for the legislature to say to a governmental subdivision, "You are authorized to raise money for the construction of a hospital by issuing bonds, but you cannot commence construction until and unless the voters of the county approve the actual construction" represents a way of doing things so awkward and inconsistent with practicality as to invite rejection of the notion that the legislature intended this result, absent a clear expression by it to this effect.

(4) The known impact of inflation on construction costs supports the view that the legislature intended that the planned construction should be completed without the uncertainty and delay which are involved when the electorate is required to inform itself about the relevant facts bearing on the advisability of a given project and to express its judgment on the question by ballot.

---

[11] Green v. Independent Consol. School Dist. No. 1, 243 Minn. 519, 68 N. W. 2d 493 (1955); Kaufman v. County of Swift, 225 Minn. 169, 30 N. W. 2d 34 (1947); Muehring v. School Dist. No. 31 of Stearns County, 224 Minn. 432, 28 N. W. 2d 655 (1947); Op. Atty. Gen. 1001-B, January 23, 1947; 1001-B, May 18, 1949; 1001-B, September 2, 1952; 1001-B, September 26, 1952; 1001-H, May 27, 1955; 1001-B, August 22, 1955; 1001-B, August 9, 1957.

(5) If the authorization to construct is not to be found in L. 1974, c. 581, then other laws cited herein relating to this project would be rendered ineffective and impossible of execution as they now exist, directly defeating unmistakable expressions of legislative intent found within them. We cannot attribute to the legislature a purpose in L. 1974, c. 581, contradictory to the thrust of the other legislation designed to ease the way for prompt beginnings on, and an expedited completion of, the St. Paul-Ramsey Hospital addition.

Having considered the subject matter, the language of the statute itself, the importance of its provisions, the object intended, and the apparent legislative intent, see Cashman v. Hedberg, 215 Minn. 463, 10 N. W. 2d 388 (1943), we are of the opinion that, in so far as the special provisions of c. 581 and the general rules of Minn. St. 376.009 to 376.07 appear to conflict on the question of the referendum procedures and we are unable to reconcile that conflict without doing violence to c. 581, c. 581 controls. Minn. St. 645.26, subd. 1.

It therefore follows that the trial court correctly concluded that L. 1974, c. 581, justifies the course of action contemplated and pursued by respondents in proceeding as they did with the bond issue and construction plans here involved.

2. The trial court in ordering judgment for defendants and intervenors did so on the basis of findings which included paragraph No. 4, which seems inconsistent with the judgment as entered. It reads:

"4. The Board of Commissioners of Ramsey County is required to submit to voters of Ramsey County the question of constructing an addition to the St. Paul-Ramsey Hospital in this case as required by Minnesota Statutes, Sections 376.009 to 376.07 as to costs, including equipment, in excess of $5,600,000."

The finding appears inconsistent with the judgment because the effect of the judgment as entered is to dismiss the complaint of the plaintiffs, in accordance with the prayer appearing

in the answer, and to deny in all respects plaintiffs' prayer for an injunction restraining defendants from proceeding with the construction project and mandating submission of the question to the voters. Plaintiffs have not urged reversal of the judgment upon this ground and, this being the case, the "finding," which we consider to be a conclusion of law (Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 59 N. W. 2d 841) could be disregarded at this time on the ground that the judgment as entered, as distinguished from the legal reasoning adopted by the trial court in support of its order, is controlling. We think it better, however, under the circumstances of this case, where all parties have cooperated in an effort to obtain a speedy and final resolution of the basic issues, to deal directly with the question of whether Minn. St. 376.009 to 376.07 require voter approval of expenditures in excess of the amount to be raised by the authorized bond issue.

In our opinion, L. 1974, c. 581, § 2, which authorizes the board of county commissioners of Ramsey County to "use any other moneys in the county treasury not otherwise specifically dedicated" for the remodeling and construction project is not dependent on voter approval. Given the facts that the legislature was addressing a unique problem calling for joint funding by the state, Ramsey County, and private sources; substantial expenditures have already been made in anticipation of a completed undertaking; the legislature was probably aware that the share to be paid by Ramsey County might exceed the amount to be raised by the bond issue, although not necessarily so; the cost impact of inflation in the event of delay is predictable; and the residual power of the Ramsey County Board of Commissioners to control the amount to be contributed to the project by the county exists, we believe that if the legislature intended the authorization spelled out in § 2 of the act to be subject to voter approval it would have said so specifically. It did not do so and, in our opinion, voter approval for Ramsey County participation in this project is not required if the county's share of the cost

is paid for from the proceeds of the bond issue or from other moneys in the county treasury not otherwise specifically dedicated.

3. We consider the claim that a statute which exempts the construction of a public facility from a general requirement in the statutes of voter approval violates the due process and equal protection clauses of the United States Constitution to be without merit. To the extent that L. 1974, c. 581, creates a classification, it is one the propriety of which is to be measured by the standard of reasonableness.

Here, the legislative choice is reasonable. It distinguishes, not voters and non-voters, nor any other groups of persons within Ramsey County, but, rather, the location of a specialized medical facility within or without Ramsey County and how that facility will actually be financed and constructed as opposed to how similar facilities are built in other counties of the state. The legislatively recognized need for expanded capabilities to provide for the care and treatment of crippled children and the legislative choice of meeting that need by conjoining the operations of the Gillette Hospital Authority with those of an existing facility eminently justifies and allows for the special treatment accorded Ramsey County by the legislature.

Moreover, the privilege of voter consideration which the legislature affords in some situations, as in §§ 376.009 to 376.07, and not in others, as in c. 581, is not to be compared to the right to vote for public officials or the right to equal educational opportunity, matters involved in the numerous cases cited by appellants in support of their claim of unconstitutional discrimination and which would require more stringent judicial scrutiny prior to obtaining our approval.

The case of City of Phoenix v. Kolodziejski, 399 U. S. 204, 90 S. Ct. 1990, 26 L. ed. 2d 523 (1970), is germane. In that case, a city resident, otherwise qualified to vote in an election to approve issuance of general obligations bonds, lacked ownership of real

property. The franchise was limited to owners of real property; Kolodziejski was not allowed to vote.

Kolodziejski's challenge to the classification based on differences in interest not sufficiently substantial to meet the requisites of the equal protection clause was upheld. The United States Supreme Court observed that an exclusion of nonproperty owners in elections of this nature could be justified only by an overriding interest of the property owners which the state could properly recognize.

That case does not control here. There is no distinction drawn between the voters of the political subdivision, Ramsey county. All the voters of Ramsey County are treated alike by c. 581: None may vote here. Similarly, no other voter in the state can cast a ballot on the question; nor could they in any event given the statutory scheme of things establishing each county as a separate election district.

Finally, after a close review of the facts of this case, we find no denial of appellants' due process rights in the series of events to date, either as a concomitant of any alleged equal protection violation, see Alan v. County of Wayne, 388 Mich. 210, 200 N. W. 2d 628 (1972), or independently.

4. The general rule is that a party is not entitled to raise a question for the first time on appeal. E. g. Edelstein v. Duluth, Missabe & Iron Range Ry. Co. 225 Minn. 508, 31 N. W. 2d 465 (1948); Duenow v. Lindeman, 223 Minn. 505, 27 N. W. 2d 421 (1947). Nonetheless, appellants now raise for the first time arguments directed to the issues of multiple subjects in c. 581, and improper delegation of legislative authority. Those arguments have been noted here, along with the replies of respondents. We do not feel that appellants' arguments or the peculiar facts of this case justify a departure from our well-settled precedents. Apart from the rule, the issues asserted appear to be without substance.

5. One final point: Having raised their objections without success before the Ramsey County Board of Commissioners,

appellants moved for a temporary restraining order, which was denied by Judge E. Thomas Brennan of the Ramsey County District Court. Judge Brennan's order set a bond of $1 million as a condition precedent to appellants' maintaining the action below. Appellants then petitioned this court for a writ of prohibition restraining the district court from enforcing the bond requirement. In the course of the hearing before us, respondents agreed not to demand compliance with the bond requirement, and the matter was advanced for decision.

Because of the result we reach today and the scope of the earlier agreement, respondents' waiver of the $1 million bond is no longer effective.

6. Except for paragraph No. 4 of the trial court's "findings," the decision of the trial court is approved and the judgment from which the appeal is taken is affirmed.

Affirmed.

MR. JUSTICE OTIS took no part in the consideration or decision of this case.