**In re the Marriage of Karen Louise HEMINGWAY, Petitioner, Respondent,**

**v.**

**David Arthur HEMINGWAY, Appellant.**

**No. C9–85–1554.**

Court of Appeals of Minnesota.

March 11, 1986.

Bryan J. Baudler, Austin, for respondent.

John H. McLoone, IV, Molly Byron, Waseca, for appellant.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

David A. Hemingway appeals from a May 16, 1985 judgment of dissolution and from a July 16, 1985 order denying his alternate motions for new trial or for amended findings and conclusions of law. We affirm.

## FACTS

David and Karen Hemingway were married on June 5, 1964 and separated on March 20, 1982. Dissolution proceedings were initiated by Karen Hemingway on March 22, 1983. A three-day trial followed, starting on May 30, 1984 and resuming on January 24 and 25, 1985. At the completion of the trial, both of the couple's two children were emancipated. The facts adduced at trial follow.

During the course of their marriage, the parties acquired three separate parcels of farm real estate. (The parties conveyed their vendee's interest in a fourth parcel, Parcel D, back to appellant's parents during the course of the dissolution proceedings.) Parcel A is approximately 156 acres and contains the parties' two-acre homestead. The parcel was purchased in 1968 by appellant's father for $24,000 and transferred to the parties as joint tenants in November 1972. The parties assumed a mortgage in that amount with the Federal Land Bank.

In 1972–73, the couple built the homestead on the property. An additional $30,-000 was borrowed from the Federal Land Bank and used primarily to pay off the existing mortgage balance. The parties also borrowed $20,000 from People Savings & Loan at that time. Parcel B, approximately 40 acres, and Parcel C, approximately 70 acres, were purchased in 1976 for $126,500.

Appellant began working full time for the Minnesota Department of Transportation in 1963. He continued to work full time until the spring of 1977. During this time, in 1971, he also began farming on a part-time basis. Farming became appellant's full-time occupation after he left his position with the Department of Transportation.

Respondent returned to college in 1971. In 1976, she graduated from Mankato State College with a degree in speech therapy. From 1976 through the spring of 1983, she was employed full time as a speech clinician with the Hayfield Public Schools, grossing approximately $14,000 per year.

During the course of respondent's employment, the parties maintained a joint checking account with separate checkbooks. Respondent's earnings were utilized mainly for household expenses, groceries and expenses related to the couple's children. Checks written for mortgage payments and expenses relating to the farming operation derived from appellant's individual checkbook.

In September 1983, respondent took a leave of absence from her job with the Hayfield Public Schools and enrolled full time at St. Cloud University to pursue a masters degree in speech pathology. At the conclusion of the trial, respondent's leave of absence had expired.

The trial court was presented with varied appraisals of the couple's real and personal property, as well as testimony from lay witnesses familiar with the Hemingway farmland. The appraisals are summarized as follows:

| Estimated Market Value for: Petitioner (Karen) | Parcel A | Parcel B | Parcel C |
|---|---|---|---|
| (1) Thorkelson Services, Inc. (date of appraisal: 3/12/83) Exh. 4 | $410,000 | $62,500 | $115,000 |
| (2) Real Estate Appraisers, Inc. (date: 4/4/84) Exh. 14 | $341,300 | $63,100 | $131,900 |
| Respondent (David) | | | |
| (3) Carol C. Lenz (date: 1/17/85) Exh. J | $257,900 | $28,000 | $ 54,600 |

The trial court found the parties mutually indebted in the following amounts:

| | March 1983 Commencement of Dissolution Proceedings | January 1985 Date of Trial |
|---|---|---|
| People Savings & Loan (house loan) | $ 16,400.00 | $ 15,300.00 |
| Federal Land Bank (first mortgage on farmland) | 151,286.90 | 165,273.26 |
| PCA (second mortgage on farmland) | 227,554.66 | 253,660.61 |
| PCA (grain leg lease) | 17,535.00 | 12,054.00 |
| CCC (bin loan) | 15,288.01 | 15,288.01 |
| Totals | $428,064.57 | $461,575.88 |

It was undisputed that since March 1983 appellant had sole use of the farming assets. Respondent did not participate in decisions relating to these assets. It was further undisputed that the PCA mortgage balance as of January 1985 included a minimum of $800 per month toward appellant's living expenses since the date of separation. In addition, respondent had incurred debts totaling $16,875 since the parties' separation plus $1,700 in appraisal expenses. The court directed appellant to pay half of the appraiser's fees as provided in an earlier agreement.

The parties were further determined to be part owners of farm machinery and equipment valued at approximately $67,266 and co-owners of tangible personal property totaling $15,900. Appellant was awarded equipment worth approximately $35,591. In lieu of respondent's ownership interest in the machinery, appellant was directed to pay $17,670.83. The parties were also awarded household goods in their posses-

sion as well as their respective interests in various stock, pension plans, and insurance policies. The trial court found such a division substantially equal in value.

The trial court further found the couple to be joint owners of an undivided one-half interest in a machine shed storage bin on property owned by appellant's brother. Appellant claimed at trial that the shed was owned solely by his brother. The trial court determined that the fair market value of the parties' equity in the shed, over and above the debt owed to appellant's brother, was $5,400. Appellant was awarded the parties' one-half interest in the shed and directed to pay respondent $2,700. The trial court further concluded that a storage bin on Parcel A was marital property. Appellant claimed this bin was a gift from his father in 1969 and thus nonmarital.

Appellant further claimed nonmarital gifts of $8,500 from his parents in the form of debt· forgiveness. Trial exhibits reflected that appellant received two checks totaling $5,000 from his parents in October 1981. Appellant testified that this amount was applied toward a PCA loan. His deposition testimony, re-read on cross-examination, disputed this and instead indicated that the $5,000 was applied toward the contract for deed on Parcel D. The depositions of appellant's parents were admitted into evidence by stipulation and essentially corroborated that the payments were a form of debt reduction on the contract for deed obligation. Appellant stated that the remaining $3,500 was a gift of debt forgiveness on a promissory note totaling $7,000. He testified that the $7,000 was utilized to purchase Parcel A. The trial court found the evidence insufficient to support the award of $8,500 as nonmarital property.

It was also established at trial that appellant received $6,000 in proceeds from the sale of a dwelling (Ellendale home) owned prior to the marriage. Appellant testified that the proceeds were placed in a savings account and later used to construct the couple's homestead on Parcel A. The trial court found the $6,000 to represent appellant's nonmarital interest in the homestead.

The trial court ordered immediate sale of all the couple's real property:

That [Parcels A, B and C] shall be immediately listed for sale with a realtor acceptable to both parties; such listing shall be made no later than June 1, 1985. * * * Any sale of such real estate shall be subject to the lease hereinafter provided for the 1985 crop season. * * * Pending the sale of such parcels of real estate, the [appellant] shall be permitted to reside in the homestead; during the period of such occupancy, [appellant] shall pay all expenses relating to the homestead, such as taxes, insurance, utilities and mortgage payments. If [appellant] shall elect not to reside in the homestead, the parties shall equally share such expenses pending the sale of the homestead. Pending the sale of the remaining parcels of real estate, the parties shall share equally in the payment of taxes and insurance.

The trial court further provided appellant with an option to rent the farmland for the 1985 crop season:

If [appellant] exercises [the option to rent farmland], he shall pay to petitioner a cash rent of $35.00 per tillable acre as petitioner's one-half share of the rental value of said lands. That if [appellant] elects not to rent said lands, the parties shall arrange to immediately rent the same to a third person, at a rent to be mutually agreed upon by the parties.

That if [appellant] elects to rent the farmlands of the parties for the 1985 crop season, he shall be permitted to use the farm machinery and equipment of the parties during the 1985 crop season. In such event, he shall also be responsible for the repair and maintenance of such equipment, * * * [appellant] shall also pay all machinery and equipment loan payments coming due during the 1985 crop season in regard to such equipment.

On May 11, 1985, the parties received a notice of default from Federal Land Bank

for $21,584.10 with an additional 30 days to cure. Post-trial motions were heard on July 8, 1985.

## ISSUES

1. Did the trial court abuse its discretion by ordering the sale of the parties' farmland without first determining the fair market value of the property when the debt load encumbering the property increased significantly between the time of separation and the dissolution trial?

2. Did appellant meet his burden of proving that various items of property were nonmarital in nature?

## ANALYSIS

1. A division of property following a marriage dissolution must be just and equitable. Minn.Stat. § 518.58 (1984). A trial court is accorded wide discretion in its division of property and its decision will not be overturned absent a clear abuse of discretion. *Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977); *Montgomery v. Montgomery,* 358 N.W.2d 169, 173 (Minn.Ct. App.1984).

Under Minn.Stat. § 518.54, subd. 5 (1984), "[a]ll property acquired by either spouse subsequent to the marriage and before a decree of legal separation is presumed to be marital property" regardless of how title is held. The marital property presumption is overcome, however, by a showing that the property is nonmarital. *Id.*

Among the factors to be considered by a trial court in its division of marital property are:

[T]he length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contribution of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker. It shall be conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife. The court may also award to either spouse the household goods and furniture of the parties, whether or not acquired during the marriage.

Minn.Stat. § 518.58 (1984). Of particular relevance to this appeal is Minn.Stat. § 518.58, which provides:

If the court finds that it is *necessary to preserve the marital assets of the parties,* the court may order the sale of the homestead of the parties or the sale of other marital assets, as the individual circumstances may require, during the pendency of a proceeding for a dissolution of marriage or an annulment. If the court orders a sale, it may further provide for the disposition of the funds received from the sale during the pendency of the proceeding.

*Id.* (emphasis supplied).

■ A remand may be necessary when a trial court fails to make findings on the value of property in a marital property division. *See Roberson v. Roberson,* 296 Minn. 476, 206 N.W.2d 347 (1973). In the present case, however, the effect of the trial court's failure to value the real estate is negligible in view of the large amount of debt the parties had incurred at the time of trial.

■ The trial court properly determined that liquidation of the real estate was necessary to protect respondent's marital assets, which had significantly diminished since the parties' separation. While a determination of the fair market value of the property would have better served the parties' interests, the failure to do so did not constitute an abuse of discretion.

We note, however, that a variance exists between the outstanding debt balances in the trial court's findings and in its conclusions of law. The findings reflect debt balances as of January 24, 1985, the re-

sumed date of trial, while the conclusions utilize debt balances as of March 17, 1983, the date the action was commenced.

Appellant does not take issue with this precise point, but instead claims that the record is devoid of evidence to support Federal Land Bank and PCA loan balances as of March 17, 1983. This contention is meritless. Howard Huebner, administrator of credit for Federal Land Bank, testified as follows:

Q. March 17th of 1983, what was the loan balance on that date?

A. Principal balance at that time was $155,724.08. There had been accrued interest up to that date of $3,862.82. The total gross amount owed then was $159,-586.90. There's $8,300 of stock in the Hemingways' loan, so if you subtracted that, it would leave you a net pay-off figure on that date of $151,286.90.

This net figure of $151,286.90 was the exact figure utilized by the trial court. Bradley Timmerman, a loan officer for PCA, testified that as of December 20, 1982, the principal loan balance with PCA was $197,-055 and $238,230 when renewed on March 15, 1984. Although Timmerman did not provide a loan balance figure for March 17, 1983, we believe the amount utilized by the trial court, $227,554.66, is reasonably supported by foundation exhibits admitted at trial.

Appellant asserts that since farming is his only marketable skill, sale of the property would deprive him of his livelihood. He further claims that the trial court's division of the sale proceeds fails to consider his substantial "sweat equity" in the farm. In essence, he argues that his contribution far outweighs respondent's contribution.

As a preliminary point, the record does not support appellant's assertion that his marketing skills are limited to farming. He was employed with the state for thirteen years and, by his own admission, left the position voluntarily to pursue farming on a full-time basis. We do not question that appellant put long hours into management of the farm, at times 16 hours per day. That, however, does not overcome the conclusive presumption of substantial contribution by both parties to a marriage in Minn.Stat. § 518.58.

It was unrefuted that prior to respondent's employment, she participated in a number of farm duties including driving a tractor, field work and obtaining cash advances from the PCA. After she started working, she participated on a more limited basis, handling the bookkeeping and tax preparation functions. Moreover, although she worked full time, respondent remained the primary caretaker of the couple's children, managing the household responsibilities during the same period. Appellant simply failed to overcome the presumption enveloped in Minn.Stat. § 518.58.

■ The trial court was faced with clear evidence of an increase in debt load between March 1982 and March 1984. In view of the troubled farm economy, the court had no reason to conclude that the parties' financial situation would measurably improve. The trial court could not direct secured creditors to release assets for respondent's benefit, nor could it freeze debt balances against those assets at levels existing at the time of the parties' separation. Directing liquidation of the property was soundly within the trial court's discretion.

■ Debts incurred during a marriage are apportionable as property in a dissolution proceeding. *Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App.1984). Appellant's claim that he is impermissibly burdened by the debt allocation is not convincing. Although respondent derived no benefit from farm income after March 1982 and took no part in farm-related decisions, she remains mutually responsible for $30,500 of additional PCA debt incurred between December 1982 and March 1983 ($227,555 less $197,055).

The decree further provides that appellant is fully liable for any debt amounts exceeding the March 1983 figures and that he is entitled to a credit of one-half any amounts to the extent they are less than

those figures. Appellant is thus liable for an additional debt load of $36,801.81. Inclusive in this amount are $800 per month advances from PCA for appellant's living expenses after the parties' separation plus additional advances for utility expenses. Therefore, much of the additional debt load relates directly to advances utilized for appellant's own purposes.

■ Moreover, respondent remains solely responsible for repayment of $16,875 in debts she incurred since the parties' separation. The trial court properly apportioned the parties' debts in light of these facts. *See Filkins*, 347 N.W.2d at 529.

We are not insensitive to appellant's position. We realize that liquidation of the property will uproot his life to a significant degree. Under the circumstances, the trial court properly chose the only method reasonably calculated to protect respondent's rapidly diminishing net share of the farming assets. It does appear, however, that appellant can purchase or rent other farmland in the area with proceeds from sale of the land and machinery. He testified that comparable and possibly superior farmland was available for less than the fair market value of his own property.

■ 2. A motion for new trial must set forth specific grounds upon which a new trial is sought. *Swartwoudt v. Swartwoudt*, 349 N.W.2d 600, 602 (Minn.Ct.App. 1984). A reviewing court will not consider issues raised for the first time on appeal. *Morton v. Board of Commissioners*, 301 Minn. 415, 223 N.W.2d 764, 771 (1974). Appellate review is limited to issues properly presented and considered by the trial court in deciding the matter before it. *Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599, 604 (Minn.1982).

■ For the aforementioned reasons, we need not address whether appellant is entitled to increased equity in the homestead acquired with his nonmarital funds. *See Schmitz v. Schmitz*, 309 N.W.2d 748 (Minn. 1981). This allegation of error was neither specified in appellant's motion nor articulated to the trial court during the post trial motion hearing.

With regard to appellant's $8,500 claim in debt forgiveness, we think the trial court properly characterized this as marital property. Of this amount, $5,000 was applied to Parcel D, property sold during pendency of the dissolution action. The funds have thus lost any prior nonmarital status they might have had. The evidence supports that the $7,000 note from which appellant claims $3,500 in debt forgiveness was given, after the parties' marriage, for general farming expenses related to start-up. Appellant partially repaid his father with marital funds.

We would be hard-pressed to determine that the debt forgiveness was nonmarital when it is evident that the $7,000 loan itself was provided for the benefit of both parties. The evidence is further insufficient to support a finding of nonmarital property. It is not dispositive that appellant and his father co-signed for a loan on this item. At the time, appellant's father was the legal owner of the property. Further, it appears that appellant, not his father, repaid the loan.

## DECISION

The trial court properly determined that liquidation of the farmland was necessary to preserve marital assets in view of the significant debt loan encumbering the property when notice of default was received prior to post-trial motions. Appellant did not establish by credible evidence that various items of property were nonmarital in nature.

Affirmed.