**In re the Marriage of Cheryl CHAFIN, Petitioner, Appellant,**

v.

**Mark RUDE, Respondent.**

**No. C6–85–2242.**

Court of Appeals of Minnesota.

Aug. 5, 1986.

Susan Sachs, Mary Wertz, Minneapolis, for appellant.

Nancy Zalusky Berg, Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

During dissolution proceedings in 1981, the parties entered into a stipulation for joint legal and physical custody of their one-year-old son. In March 1982 respondent Mark Rude moved for a change of custody. Appellant Cheryl Chafin did the same. The trial court awarded sole legal and physical custody to the mother in March 1983. The father again moved for a custody change in January 1985. The trial court granted the motion and Chafin appealed. We affirm.

## FACTS

Appellant Cheryl Chafin and respondent Mark Rude were married in 1979. Their son Garrett was born in 1980. The parties separated in early 1981. Respondent charged Chafin with abuse and petitioned for an order for protection in February 1981, but soon thereafter withdrew it. The parties stipulated to joint legal and physical custody and the trial court adopted this agreement.

After the dissolution, however, the parties were unable to cooperate in the joint custody arrangement. In March 1982 Rude moved to modify custody to award him sole legal and physical custody of the child. Chafin did the same.

Following extensive litigation and an evidentiary hearing in January 1983, the court awarded sole legal and physical custody to appellant. At the hearing, respondent said that he had been Garrett's primary caretaker practically since the child's birth. Because appellant worked two jobs and later entered law school, Rude cared for the child during the day and arranged his work schedule around appellant and their son, working the late afternoon and evening shift. He noted that after the dissolution, the boy was in daycare during the daytime and that he cared for Garrett in the evening and at night.

Psychologist Gail Welling of the Ramsey County Community Human Services Department evaluated Chafin, Rude and the child pursuant to a 1982 court order. She recommended discontinuation of the joint custody arrangement because of the parties' inability to cooperate with each other. However, she was unable to recommend which parent should have custody. She noted that both parents accuse one another of lying and of being a careless and neglectful parent. She found that Garrett has a positive relationship with each parent.

Family Court Officer Kathy Steen verified Wellings' assessment that both parents have personal difficulties. She stated that Garrett might be harmed by his parents' behavior and the fight over him if the

situation were not resolved. She also recommended against continuing joint custody. She wrote that although both parents possess positive and negative attributes, Mark Rude should be granted sole legal and physical custody of Garrett, with liberal visitation for appellant, and with little contact between the parents.

Dr. Michael Shea, a clinical psychologist, also evaluated the parties in 1982 at Rude's request. He claimed that his recommendations would be in Garrett's best interests, "however that might impact each parent." Shea interviewed Garrett, Chafin, Rude, Chafin's mother and Rude's sister. He also reviewed educational and medical records, psychologial reports, and conducted his own psychological examinations.

In his report, Shea stated his opinion that Chafin believes Rude should have little or no place in Garrett's life, despite contrary comments. He observed that it would be difficult for Chafin to encourage Garrett to have a good relationship with his father. He said that Chafin believes Rude's mother would try to keep her son from her.

Shea recommended that Rude be granted sole legal and physical custody of his son and concluded that Rude has a high level of emotional stability and could willingly encourage a good relationship between Garrett and his mother. He found that although Chafin could provide an intellectually stimulating and emotionally supportive environment for Garrett, she had emotional problems.

In May 1983, the trial court amended the judgment and placed sole legal and physical custody with the child's mother. The court ordered extensive visitation for Rude, including one day and night each weekend, with alternating full weekends, and with "reasonable" evening visitation during the week.

The court supported this decision with findings that both parents are fit to have custody and that they both love their son. The trial court found that Chafin is an excellent mother and that Rude is an excellent father.

In 1983, the determining factor for the trial court seemed to be an identification of the party who would better facilitate visitation and encourage a relationship between Garrett and the noncustodial parent. The trial court found "that Petitioner [Cheryl Chafin] is the parent best suited to provide consistent access to the other parent for purposes of visitation and other parental activities."

In the spring of 1984, after Rude returned Garrett to his mother from a visit, appellant noticed marks on her son's back. She sought an order for protection for herself and Garrett under the domestic abuse statute. *See* Minn.Stat. § 518B.01 (1984). She said she feared the two red marks were burns inflicted by the boy's father. According to the police report the child was distant, evasive and very hesitant to talk to the officers. The report states that the child first said he didn't know how the spots got there but later said that Rude burned him with the lighted end of a match four times and then placed a blue plastic bag over him.

Respondent denied these charges. While the matter was under investigation and during pendency of the proceedings he was limited to short periods of supervised visitation with his son.

Dr. Jane McNaught, a court-appointed psychologist who examined Garrett, testified at the order for protection hearing. McNaught evidently questioned the child's veracity and said she did not believe Rude burned his son. Respondent claims that at the conclusion of the hearing the family court referee asked if there was a request for custody change. The trial court issued an order prohibiting the parties from harassing one another, but the court made no jurisdictional finding that Rude had abused his son.

In February 1985, Rude asked for a change in custody, claiming that the child was being harmed by appellant's efforts to sever the relationship with his father. He alleged both physical and psychological interference with visitation and requested an

evidentiary hearing which was held on September 10, 1985.

Dr. McNaught testified at this hearing that she did not believe Rude had abused his son in 1984. She based her opinion on four factors. First, she said the fact that the child spontaneously discussed specific details of the abuse was unusual. Second, in her next two meetings with the child he told her his report of the burn was make believe and asked McNaught, "[p]lease don't tell mommy, she might get mad at me." Third, Garrett seemed preoccupied with remembering his mother's instructions not to "lovie up" to his father and fourth, he didn't act like an abused child with his father.

McNaught concluded that Chafin had induced the abuse story and pressured Garrett to dislike his father. She testified that such conduct is potentially damaging to a relationship between Garrett and his father.

Peter Vadnais, Ramsey County Family Court Officer, related a July 1984 incident where he personally saw appellant openly loud, angry and suspicious of Rude while in Garrett's presence following a visit with his father. According to the volunteer who supervised the visit, Garrett's initial reaction to his father was very negative and the boy said, "Mom would get mad if I play with Mark Rude's toys." Vadnais also related a June 1984 discussion with the parties where Chafin said she prefers no visitation or as little as possible.

Respondent confirmed Chafin's hostility toward him, citing incidents of verbal harrassment in his son's presence. He testified about problems with the visitation schedule and of an incident where he was denied a scheduled visit. In a prehearing affidavit, respondent stated that Garrett is frightened at the start of each visit and says things such as "[m]ommy hates you" and "[y]ou're not my dad."

Chafin testified that she encouraged Garrett's relationship with his father and claims she scrupulously complies with respondent's visitation rights. She said she was scared by the abuse incident and only urged Garrett to tell the truth to McNaught and told him if he showed affection to Mark Rude he might not be believed.

Shea and McNaught both believe that Chafin's resentful attitude and actions may damage Garrett's relationship with his father. Dr. Robert Barron, a psychologist engaged by Chafin, disagreed with them. He said he did not find Chafin to be unusually hostile or maladjusted and that she has a good relationship with Garrett. He added that Garrett showed a strong degree of attachment to his mother while displaying a negative attitude toward his father. Barron testified that Garrett was a bright, normal, well-adjusted child.

Dr. Shea, who has been counseling Rude since 1983, recommended regular psychotherapy for Garrett, Chafin and Rude with transfer of legal custody from Chafin to Rude. He stated in his report that "[i]t is my professional opinion that Garrett's continued residence with his mother poses a real and serious danger to his healthy development and that Ms. Chafin is unable or unwilling to support a healthy relationship between her son and his father."

The trial court found that a change in circumstances had occurred and that a custody change was necessary to serve the child's best interests. He found that appellant attempts to coerce and intimidate her son due to hostility toward respondent, that a positive parent-child relationship cannot exist between Garrett and his father while he remains in his mother's custody, and that the child's physical and mental health has been adversely affected by the present custody arrangement.

The court's 1985 finding reverses its 1983 finding that Chafin was best able to promote a positive relationship between Garrett and both parents. The trial court now states "[t]hat the Respondent is better able and willing to promote the maintenance of a positive relationship between [the child] and both parents."

## ISSUES

1. Is the evidence sufficient to support the trial court's findings modifying custody?

2. Was respondent's request for modification properly before the trial court?

3. Did the trial court err by improperly admitting hearsay testimony?

4. Did the trial court violate Minn.Stat. § 518.18(d) by considering evidence which arose prior to the May 2, 1983 custody order?

## ANALYSIS

### 1.

The trial court's findings will not be disturbed unless they are clearly erroneous. Minn.R.Civ.P. 52.01. On appeal, the evidence must be considered in a light most favorable to the trial court's findings. *Rinker v. Rinker,* 358 N.W.2d 165, 167 (Minn.Ct.App.1984). Further, we also recognize the court's broad discretion in custody determinations. *Pikula v. Pikula,* 374 N.W.2d 705, 710 (Minn.1985).

Minn.Stat. § 518.18 (1984) governs modification of a final custody order. Appellant claims that the trial courts findings do not support a custody modification in this situation.

■ Disputed modification of child custody is prohibited by statute unless the trial court finds that: a change has occurred in the circumstances of the child or custodian; the custody change is necessary to serve the child's best interests; the child's present environment endangers his physical or emotional health or impairs his emotional development, and the advantage of the change in custody outweighs the harm. Minn.Stat. § 518.18(d); *Gunderson v. Preuss,* 336 N.W.2d 546, 548 (Minn.1983).

■ We are satisfied the evidence and the trial court findings sustain the custody modification under the four-part statutory test. The evidence shows that the relationship between the parties is now openly hostile. There was ample expert testimony that Chafin engaged in a course of conduct which undermined and deterred any possible father/child relationship. The court's expert testified that Garrett's emotional development was in jeopardy. The trial court

was justified in finding that Chafin could no longer support a relationship between Garrett and Rude. Even Chafin's expert testified about the child's negative attitude toward his father. None of the evidence contradicts the court's finding that Chafin puts the relationship between Garrett and Rude in serious jeopardy. In addition, the evidence supports a finding that Rude has had extensive parenting contact with his son and can promote the boy's relationship with both parents.

The trial court did not abuse its discretion in modifying custody of the parties' six-year-old son.

### 2.

Appellant argues that the proceeding was not properly before the trial court and also challenges the court's initial decision to take testimony. Motions for modification of custody are not permitted for two years after disposition of a prior motion. Minn.Stat. § 518.18(b) (1984). However, the statute provides an exception to the two-year rule "if the court finds that there is persistent and wilful denial or interference with visitation, or has reason to believe that the child's present environment may endanger his physical or emotional health or impair his emotional development." *Id.* § 518.18(c).

■ The proceeding was properly before the trial court by reason of its findings, already reviewed, that Garrett's emotional health and development was endangered. In addition, the statutory language on wilful interference with visitation shows a legislative concern that encompasses interference with the relationship of the child and the other parent. *Grein v. Grein,* 364 N.W.2d 383, 385 (Minn.1985). *See* Minn. Stat. § 518.175, subd. 4 (1984). We also conclude that prehearing affidavits showed a prima facie case for respondent such that it was not error to hold an evidentiary hearing on the request to change custody. *See Graham v. Graham,* 386 N.W.2d 764 (Minn.Ct.App.1986).

### 3.

Appellant objected to testimony of Peter Vadnais on notes he compiled during conversations with a Minneapolis police officer and Dr. Jane McNaught, and on notes of the visitation supervisor.

The supervisor's notes fall under the business records exception to hearsay. *See* Minn.R.Evid. 803(6). McNaught was a witness at trial and available for cross-examination on anything contained in Vadnais' testimony. If evidence from the conversation with the police officer was admitted erroneously, it was cumulative; the trial court's findings do not mention this evidence.

Appellant also contends that the child's out of court statements are inadmissible because respondent did not comply with the statute governing admissibility of out-of-court statements of certain witnesses. *See* Minn.Stat. § 595.02, subd. 3 (1984). Appellant did not make this objection at trial. Generally, a party may not raise a question for the first time on appeal. *Morton v. Board of Commissioners*, 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974). We may only consider those issues presented and considered by the trial court. *Thayer v. American Financial Advisors, Inc.*, 322 N.W.2d 599, 604 (Minn.1982). This issue is not properly before the court.

### 4.

Appellant urges us to reverse the trial court because it violated Minn.Stat. § 518.18(d) by considering facts which occurred prior to the previous custody order. Appellant argues: "Respondent's case consists solely of his 1983 accusations dusted off for the occasion. The only new development is innuendo and conjecture, unsupported by proven fact." We disagree. The trial court must consider the evidence and bearing on the 1983 custody order to determine whether there has been any change since that time. More to the point, a review of the evidence shows that respondent set forth facts suggesting a change in circumstances subsequent to the May 2, 1983

order sufficient to justify considering a custody modification. This is particularly evident regarding consideration of the 1984 domestic abuse proceeding.

We deny appellant's request to strike portions of respondent's brief showing 1982 and 1983 reports.

### DECISION

Based on the evidence in this case, the trial court did not abuse its discretion in modifying custody of the parties' six-year-old son.

Affirmed.