**Robert L. DAVIS, d.b.a. Davis & Son Contracting, et al., Appellants,**

v.

**Richard A. JOHNSON, John Speakman, Respondents,**

**James Vander Griend, Defendant.**

**No. CX-87-868.**

Court of Appeals of Minnesota.

Dec. 1, 1987.

Edward F. Klinger, Gunhus, Grinnell, Klinger, Swenson & Guy, Moorhead, for appellants.

Richard A. Johnson, pro se.

John Speakman, pro se.

Ralph E. Sheffey, Bloomington, for defendant.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellants Davis & Son Contracting (Davis), Two Inlets Mill and Building Supply (Two Inlets), EOS Corporation (EOS), Watkins Construction Company, Inc. (Watkins), and Wayne Lee Excavating, Inc. (Wayne Lee) brought an action against

Richard Johnson (Johnson), John Speakman (Speakman), and James Vander Griend (Vander Griend), seeking compensatory and punitive damages for amounts due them for labor and materials supplied in remodeling the ski resort Val Chatel, Inc. (Val Chatel).

Appellants claim the Val Chatel corporation was a sham, an alter ego, and a bare instrumentality of respondents, and that respondents intentionally misrepresented the prospective financing of Val Chatel to the detriment of appellants. Appellants sought to hold respondents personally liable for all acts purportedly undertaken on behalf of Val Chatel. The trial court found appellants did not prove fraud. It refused to pierce the corporate veil, and dismissed the claims against respondents. This is an appeal from the judgment of dismissal, dated February 9, 1987. We affirm.

## FACTS

In late spring 1984, Johnson and Speakman first saw the Val Chatel property. After discussions with Vander Griend and two other investors, they decided to purchase the property and develop it into a ski resort. Closing took place September 16, 1986.

Val Chatel's articles of incorporation were filed October 11, 1984. Johnson stated a de facto corporation existed previously, since the articles of incorporation were submitted earlier, and the corporate name would be approved soon. The shareholders contributed a total of $56,000 and a mini bus to Val Chatel in exchange for their stock. Johnson testified he did not find this constituted undercapitalization, since Val Chatel expected additional financing.

In the course of development of Val Chatel, appellants rendered services in the form of architectural planning, construction and remodeling. The parties agree that $224,521.57 remains unpaid for these services.

Prior to trial, Vander Griend filed for Chapter 11 bankruptcy, and all actions against Vander Griend were stayed.

In its findings of fact, conclusions of law, and order for judgment, the trial court found that the property was purchased by the corporation, and the purchase agreement was signed on behalf of the corporation by its president and secretary; that appellants entered into all the contracts at issue with respondents in the corporate name; that although the corporation was always undercapitalized, there were ongoing attempts at financing during the entire time at issue; that appellants failed to carry their burden of proof the corporate veil should be pierced; and that appellants failed to carry the burden of proof necessary to show fraud. The court entered judgment of dismissal of the action. Davis, Two Inlets, EOS, Watkins and Wayne Lee appeal.

## ISSUES

1. Was the trial court's finding appellants failed to carry their burden of proof of fraud clearly erroneous?

2. Did the trial court err by refusing to pierce the corporate veil?

3. Did respondents enter into the contracts at issue as individual promoters prior to incorporation?

## ANALYSIS

### I.

*Fraud*

◼ Appellants contend the trial court's finding that they failed to carry their burden of proof to establish respondents' commission of fraud was clearly erroneous.

The elements of fraud are:

1. There must be a representation;

2. That representation must be false;

3. It must have to do with a past or present fact;

4. That fact must be material;

5. It must be susceptible of knowledge;

6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;

7. The representer must intend to have the other person induced to act, or justified in acting upon it;

8. That person must be so induced to act or so justified in acting;

9. That person's action must be in reliance on the representation;

10. That person must suffer damage;

11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re–Trac Manufacturing Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (Minn.1967) (quoting *Hanson v. Ford Motor Co.*, 278 F.2d 586, 591 (8 Cir.1960)). One who asserts fraud generally has the burden of proving it, and carries that burden throughout the trial. *Whitney v. Leighton*, 225 Minn. 1, 30 N.W.2d 329 (1948).

It is within the province of the trier of fact to determine whether a defendant has misrepresented material facts and whether the misrepresentation proximately caused the plaintiff's injury. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46, 51 (Minn. 1983).

On appeal, the evidence must be viewed in the light most favorable to the verdict, and inquiry of the appellate court is limited to an assessment of whether the evidence as a whole reasonably supports the verdict. *Id.* The trial court's findings of fact will be disturbed only when the evidence, considered as a whole, does not support them. *Lehman v. Hansord Pontiac Co.*, 246 Minn. 1, 5, 74 N.W.2d 305, 309 (1955). In determining whether the trial court's finding was clearly erroneous, this court must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01; *Peterson v. Johnston*, 254 N.W.2d 360, 362 (Minn.1977).

Appellants claim that Val Chatel, Inc., was substantially undercapitalized, and that appellants detrimentally relied on representations by Johnson and Speakman, among others, that financing was forthcoming. Appellants contend respondents made affirmative statements about financing, either knowing them to be false or knowing there was inadequate or unreliable information on which to base the statement. *See Florenzano v. Olson*, 387 N.W. 2d 168, 173 (Minn.1986) (fraudulent intent exists when misrepresenter knows or believes a matter is not as represented, or speaks positively and without qualification, but is either conscious of ignorance of the truth, realizes the information relied on is inadequate or undependable to support positive, unqualified representation).

At trial, numerous witnesses testified they were assured by Speakman, Johnson or Vander Griend, or a combination of these individuals, that financing was in place and they were just waiting to close, that financing would be forthcoming shortly, or that the money was in escrow.

Robert Davis (of Davis) testified Johnson told him funds were in escrow and loans were closing. Davis testified he was furnished financial statements when he asked for them.

Architect Nicholas Ruehl (of EOS) testified he was informed that financing was in place, and "they expected closing shortly." Ruehl also testified he understood that there was money in escrow, but that he performed no credit check on the corporation and made no inquiry into its capitalization.

Ray Wattenhofer (of Twin Inlets) testified Johnson represented to him financing would be forthcoming shortly.

John Watkins (of Watkins) testified Johnson told him, at their first meeting in early October, that financing was in place, and he started work when Ruehl told him he was satisfied with respect to the corporation's financing.

No one testified for Wayne Lee.

The trial court found appellants did not bear their burden of proof that respondents had committed fraud. The court found the corporation was always undercapitalized, but that its promoters made efforts to obtain sufficient financing. This finding is supported by respondents' testimonies.

Johnson testified at trial that there was no financing, except modest sums from a Twin Cities bank. He claims he under-

stood, until March of 1985, that financing was forthcoming. He did not think the project was undercapitalized because he expected additional financing. He testified a telegram from Terra Mortgage, dated August 8, 1984, convinced him financing was almost in place. The telegram, which was introduced at trial, stated that Terra Mortgage Corp. had reviewed the loan package; that the underwriter was in negotiations with several interested prospective lenders; and that "Subject to receipt of the required documents we will have little difficulty in securing the required financing." Johnson testified that, in his opinion, financing was almost in place. This testimony was strengthened by additional documents allegedly in Vander Griend's possession from other potential lenders, and by Vander Griend's alleged statement to him before September 16, 1984, that financing was available in the form of a lender. This position is also supported by the testimony of Robert Davis, that both Johnson and Speakman appeared surprised when informed at a meeting that there would be no financing.

Johnson further claims that he never said Val Chatel had money in the bank. On cross examination, in response to the question whether he was representing to people that Val Chatel was getting long term financing, Johnson stated:

> I would say, I was relying on what I was told, there was no problem with financing, and it was literally around the corner.

Speakman testified Vander Griend was spearheading the financing, and Speakman had no expertise in that area. He testified he was not "aware of the lack of financing until that meeting [in March 1985]," and further testified that he had never wanted to be involved in the actual details of financing.

Although appellants' evidence was more than *de minimis*, we will not disturb the findings of a trial court merely because different conclusions could have been drawn. *See In re Appeal of Iverson*, 249 Minn. 156, 81 N.W.2d 701 (1957) (if different persons might reasonably draw different conclusions from the evidence, findings should not be disturbed).

Giving deference to the trial court's evaluation of the credibility of witnesses, we cannot say the finding that appellants failed to prove fraud is clearly erroneous.

## II.

*Piercing the Corporate Veil*

■ The corporate veil can be pierced to impose personal liability for corporate debts on a shareholder who engages in fraudulent conduct in the discharge of official duty. Minn.Stat. § 300.27, subd. 1(3) (1986). Appellants urge this court to find the corporate entity should be disregarded here because of respondents' allegedly fraudulent conduct. *Whitney v. Leighton*, 225 Minn. 1, 8, 30 N.W.2d 329, 333 (1947). Since we affirm the trial court's holding of no fraud, this reason for piercing the corporate veil is inapplicable here.

Appellants also urge us to pierce the corporate veil under the "alter ego" or "instrumentality" theory. This theory was applied to pierce the corporate veil in *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509 (Minn.1979). The following are factors to be considered in determining whether the corporation is merely an alter ego of the shareholder, and the veil should be pierced:

> Factors considered significant in the determination include: insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.
>
> Disregard of the corporate entity requires not only that a number of these factors be present, but also that there be an element of injustice or fundamental unfairness.

*Id.* at 512 (citations omitted). However, doing business as a corporation to limit

personal liability is not wrong; it is a major reason for incorporating. *Id.*

At trial, there was testimony that Val Chatel, Inc., started out with $56,000 and a mini bus; that it never received additional capitalization; that a portion of this money was used to pay a debt to Resource Bank; and that Johnson admitted the corporation lost $22,000 by the end of 1984, but had incurred liabilities to appellants of about $223,000. Appellants argue that based on this testimony, it would not be unreasonable to conclude the corporation was insolvent at the time of all transactions in question. The trial court made no findings as to the corporation's solvency at specific times during the period in question. It found the corporation was undercapitalized, but that there were ongoing attempts at further financing.

Appellants also argue Nathaniel Neff, spokesman for a silent partner in the venture, used segregated funds to pay an obligation to Resources Bank. This payment, they contend, was unauthorized, since Neff was not a shareholder or officer. Appellant argues that Speakman purchased ski equipment from Val Chatel but never paid for it, and Johnson testified he had charged food and drink, and may have charged some items of personal property, to the corporation "to establish some parity for out-of-pocket expenses with the shareholders."

Appellants contend all these factors indicate that Johnson was the driving force of the "Val Chatel fiasco" and that the corporation was merely a facade for individual dealings. We understand the argument, but do not find the trial court abused its discretion by not accepting it. Although corporate formalities were not followed in the one instance of Neff's unauthorized check, there is no evidence corporate formalities were intentionally ignored. There is no evidence Val Chatel shareholders paid themselves large dividends or otherwise withdrew large amounts of money or that they commingled funds.

All witnesses testified they felt they were dealing with the corporate entity, and that all documents were signed by respon-dents in their corporate capacities. There was no allegation that respondents as individuals benefited from the failed project. The trial court's holding appellants did not prove sufficient facts to warrant piercing the corporate veil is not clearly erroneous.

### III.

*Promoter Liability*

The final issue raised by appellants is whether respondents acted outside the corporate entity by entering into the agreements in question, and are thus liable. They contend respondents entered into all the transactions at issue prior to the time Val Chatel, Inc.'s articles of incorporation were filed. Appellants did not raise this issue below. A party is not entitled to raise an issue for the first time on appeal. *Morton v. Board of Commissioners*, 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974). We therefore do not address this issue.

### DECISION

The trial court's finding appellants did not bear their burden of proving fraud by respondents was not clearly erroneous.

The trial court's finding appellants did not bear their burden of proof that the corporate veil should be pierced was not clearly erroneous.

Appellants did not raise the issue of promoter liability at trial, and we will not address it here.

Affirmed.